No. 2165

Second Circuit Appeal

---

DOCTORS BLAKE AND ZEAGLER v. O. F. HACKNEY
ON INTERVENTION AND THIRD OPPOSITION OF MRS. ANNIE L. DUPUY HACKNEY

---

(February 3, 1925, Opinion and Decree)
(March 2, 1925, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Marriage—Par. 127.**
Article 2399 of the Civil Code provides that every marriage contracted in this state superinduces a partnership or community of acquets and gains, if there be no stipulation to the contrary.

2. **Louisiana Digest—Marriage—Par. 97, 99, 159.**
Article 2402 of the Civil Code provides that "this partnership or community consists of the profits of all effects of which the husband has the administration and enjoyment". Where it is proven that the property purchased by the wife after the marriage was bought with her paraphernal funds it does not fall into the community.

Appeal from the Thirteenth Judicial District Court, of Parish of Rapides, Hon. Leven L. Hooe, Judge.

This is a suit in which an injunction was issued against the sale by the sheriff on a writ of fi. fa. and enjoining the sale of the wife's separate property on a judgment against the husband. There was judgment perpetuating the writ of injunction; and plaintiff, the defendant in injunction appealed.

Judgment affirmed.

Provosty and West, of Alexandria, attorneys for plaintiff in injunction Mrs. Hackney, appellee.

K. Hundley, of Alexandria, attorney for defendant in injunction, Doctors Blake and Zeagler, appellants.

OPINION.

ODOM, J. On January 26, 1923, the plaintiffs, Doctors Blake and Zeagler, obtained judgment against the defendant, O. F. Hackney, in the sum of $250.00.

On April 12, 1923, the plaintiffs procured the issuance of a writ of fi. fa., which writ was placed in the hands of the sheriff for execution. Under this writ the sheriff seized fifty acres of land situated in the parish of Rapides, which land was seized as the property of the defendant, O. F. Hackney. He was about to sell this property under the writ in satisfaction of said judgment when he was met with an injunction by Mrs. Annie L. Dupuy Hackney who sets up in her petition that

she is the wife of O. F. Hackney and she is the owner of the property seized under the writ. She alleges that the property is her separate paraphernal property, the same having been acquired from L. J. Hakenyos on October 15, 1917, with her separate paraphernal funds; that said property is not the property of O. F. Hackney but that it belongs to her and that should the sheriff sell it such sale will result in injury and damage to herself. She attaches to her petition the deed from L. J. Hakenyos to herself.

The plaintiffs in the original suit, defendants in injunction, filed an exception of no cause of action, which was properly overruled by the lower court, and then filed an answer in which it was denied that the property seized belonged to the plaintiff in injunction and especially denied that it was purchased with her separate paraphernal funds.

It is especially alleged in the answer that the plaintiff in injunction had never possessed any separate and paraphernal funds, that she owned nothing when she was married to O. F. Hackney, and that in truth and in fact the property which had been seized, while standing in the name of the plaintiff in injunction, belonged to the community which existed between her and her husband, O. F. Hackney, and was therefore subject to the community debts.

The case was tried and resulted in a judgment in favor of the plaintiff in injunction perpetuating the writ, declaring that the property seized belonged to the plaintiff in injunction and was not subject to the community debts and ordering the same released and awarding $50.00 as damages for attorney's fees.

From this judgment the plaintiffs in the original suit and defendants in injunction, have appealed.

OPINION:

We find in the record this agreement as to attorney's fees:

"It is agreed by and between counsel for plaintiffs and defendant that $50.00 for attorney's fees is allowed either on the dissolution or the sustaining of the writ of injunction in this case, with right to sue for additional attorney's fees."

Under this agreement the court below properly awarded judgment in favor of plaintiff in injunction for the sum of $50.00 as attorney's fees.

The deed from L. J. Hakenyos to Mrs. Annie L. Dupuy Hackney which is dated October 15, 1917, contains the following stipulation:

"The vendee declares that this property is purchased with her own paraphernal and separate funds and is to remain her separate property."

The deed is signed by her and her husband who makes himself a party thereto for the purpose of authorizing his wife to purchase.

The plaintiff testifies that she was married to O. F. Hackney in the year 1907, some ten years previous to the acquisition of the property in controversy in this suit. She testifies that she made the cash payment of $225.00 with money which she acquired from the sale of personal property which was donated by her father previous to her marriage. She says, in substance, that her father gave her a mare and colt and two cows and calves. She does not state the exact date on which her father gave her the property. She says that about one year after her father gave her the property she sold the mare and colt back to him for the sum of $150.00 in cash and that subsequently she sold a cow for $50.00 and a yearling for $10.00 and at other times sold the increase from these cattle, so that within a few years,

she accumulated more than enough money to make the first payment on her land. She testified that she kept the identical money which she had received from the sale of her livestock until the date on which she purchased the land; that she had kept this money in an armoir; that 'she did not let her husband get possession of it, as she feared if she did he would spend it.

Her testimony on the point of her ownership of the livestock is corroborated by that of her sister, her husband, her stepson, a man by the name of Lackney, a colored man by the name of Hinson, and a blacksmith by the name of Reed, who says that he made a branding iron for Mrs. Hackney. All these parties say that when Mrs. Hackney was married to O. F. Hackney she carried the livestock with her to the place of her husband.

Mrs. Lackney testifies that she bought a cow and calf from Mrs. Hackney and paid her .$50.00 for the same.

There were some witnesses introduced by the defendants, to-wit: J. A. Baker, W. M. Hathorn, C. S. Dupuy, and one or two others, who testified that they had known Mrs. Hackney and her father for many years and some of them spoke positively that she carried no livestock with her when she was married, and that if she ever owned any they knew nothing of it. Others state that they had known her for a great many years and that she may have owned livestock but if she did they knew nothing of it. There is also testimony in the record that Mrs. Hackney's father owned no real estate and but little personal property. However, it is conceded by all who testified on that point that he did own some livestock, and one of the witnesses testified that when he knew him he owned a mare and colt and two cows and calves.

After examining all of the testimony carefully we are thoroughly convinced that Mrs. Hackney, the plaintiff in injunction, did own at the time of her marriage some livestock and that she later disposed of a portion of them and of the increase, and that in this manner she had acquired enough money to make the cash payment on the property in 1917. The witnesses who testified for the plaintiff are positive to the effect that she did own the property and those who testified in favor of the defendants, with one or two exceptions, are not so positive. Their testimony, as a rule, is of a negative character.

So that we hold that the cash payment on the property made by plaintiff in injunction was made with her separate and paraphernal funds, and therefore that the property became her separate property.

There was a deferred payment of $300.00 represented by a note. The plaintiff says that she leased her property for the year 1918 to her stepson and that she received as rental that year one-fourth of the crops produced, which netted her an amount more than sufficient to pay this note. Her husband, O. F. Hackney, and her stepson, who cultivated the land during that year, corroborated her on this point. Her stepson says that he cultivated the land and that he made $1700 or $1800 worth of cotton, one-fourth of which amount he paid to her.

On the question of the administration of the property, plaintiff says that her husband did not have control or management thereof, but that at all times she had fed and looked after her livestock and that she looked after her real estate, and that at no time had her husband had anything whatever to do with either the livestock or the real estate.

Mr. L. J. Hakenyos, who sold her the property, testified that all negotiations leading up to the purchase were conducted

by Mrs. Hackney herself and that she personally made the initial payment as well as the last payment; and that he had never had any interview with her husband except possibly when he came with her to authorize her to make the purchase.

There was no intimation on the part of anyone that this is not true.

We think under the testimony the property seized under the writ is that of the wife and is not subject to the debts of the community.

Civil Code, Article 2399, provides that every marriage contracted in this state superinduces of right partnership or community of acquets and gains, if there be no stipulation to the contrary.

So far as the record shows, there is no stipulation to the contrary and therefore a community existed between Mrs. Hackney and her husband.

Article 2402 of the Civil Code provides that:

"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment."

The plaintiffs in the original suit, defendants in injunction, in their brief cite the case of Knight vs. Kaufman and Meyer, 105 La. 35, 29 South. 711, where it was held that the fact that title was taken in the wife's name and the property paid for out of her earnings for personal services rendered after marriage did not take it out of the category of community property, there being no separation of property.

They also cite to the same effect Succession of Manning vs. Burk, 107 La. 459, 31 South. 862; Succession of Manning, 150 La. 1008, 91 South. 435, and Schwab vs. Hava, 154 La. 922, 98 South. 420.

It is unquestionably true that the taking of title in the wife's name does not take it out of the category of community property; and it is also true that property purchased during the existence of the community is presumed to be community property. No citation of authority is needed on this point. But it is also true that property which is purchased by the wife after marriage with her separate paraphernal funds is her separate property and does not fall into the community. That is the case here.

The plaintiff in injunction purchased this property with money, the proceeds of the sale of personal property which she owned prior to the date of her marriage. Therefore the property in controversy in this suit did not fall into the community.

Bower and Garner vs. F. Frindell and Wife, 17 La. 301; Knoblock & Rainold vs. Posey, 126 La. 610, 52 South. 847; Mary G. Shaw vs. Artemus Hill, 20 La. Ann. 531; Stauffer, MaCready & Co. vs. Henry L. Morgan, 39 La. Ann. 632, 2 South. 98; Philip Drumm vs. Louisa Kleinman, 31 La. Ann. 126, and many other cases which might be cited.

For the reasons assigned, it is ordered that the judgment of the lower court be affirmed with costs.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. Counsel for appellants ask a rehearing on the grounds:

1. That the court erred in accepting as true the testimony of Mrs. Hackney which, he says, is vague and indefinite, parrotlike, self-contradictory, supported only by her own relatives, and contradicted by disinterested witnesses.

2. That the court erred as to the law, which is that in cases of this kind the wife must show by indubitable proof that the property was bought with her separate, paraphernal funds, under her separate administration and control.

### I.

On the question of the source from which was derived the cash payment of $250.00, Mrs. Hackney says that her father, Mr. Dupuy, before her marriage gave her a mare and colt and two cows and calves; that she subsequently sold back the mare and colt to him for $150.00; that from time to time she sold cattle, the progeny of the cows, mentioning one item of a cow sold to her sister for $50.00 and saying she sold others to butchers; that she looked after the cattle herself and her husband had nothing to do with them; that she kept the money she received in her armoir and made the cash payment with this money.

All this may be false, but it is not vague or indefinite. Counsel have not pointed out any self-contradictions in her testimony nor have we found any. Neither do we perceive anything parrot-like in her testimony. Her sister corroborates her as to buying the cow for $50.00 and a negro man corroborates her as to bringing the cows and calves and the mare and colt to her new home when she married. S. J. Reed also corroborates her as to her father's giving her "some cows and calves," etc. He was not asked as to the specific items. Her husband also corroborates her as to her bringing the mare and colt, cows and calves, selling the mare and colt back to her father, and also selling some cattle, but was not asked as to the number.

The counter testimony was as follows:

J. A. Barker said that at the time of Mrs. Hackney's marriage her father had no plantation; worked on halves; and the only property he had "that witness knew of" was a cow and calf and a small pony. He further stated that when she moved to her new home she did not bring any cattle, horses or stock of any kind "that he knew of", and that if she had brought any he "guessed" he would have known of it. He says he lived within four or five miles of the Hackneys at the time they married, and further, that he did not know Mrs. Hackney at all before she married and had only a passing acquaintance with her father. His testimony was given sixteen years after her marriage.

W. M. Hawthorn says he knew Mrs. Hackney's father at the time of her marriage, lived about three miles from him, and that he worked on shares, but that he did not know how much livestock he had or whether Mrs. Hackney brought any livestock in the marriage or not.

C. S. Duprey says that he knew what cattle and livestock Mrs. Hackney's father had while living at Egg Bend, but was not asked to tell what it was. He further says that he did not know of any cattle Mrs. Hackney brought and if she had brought any he would have known it and that when her father moved away he had a couple of cows and a pony. This witness moved away from the community where the Hackneys lived in 1911—twelve years previous to the time he was testifying.

Kit Hathorn, asked how much livestock the father had, answered: "All I saw was a pony and a couple of cows and calves." He further states that Mrs. Hackney did not bring any cattle "that he knew of" and that if she had brought any he guessed he would have known it.

Thus it appears from the testimony of defendants' own witnesses that the father had a pony and a cow and calf, and according to Duprey and Kit Hathorn, two cows and calves. None of them state that this was all he had but only that it was all they knew of.

Manifestly this testimony, negative and qualified as it is, cannot rebut the positive testimony of Mrs. Hackney and her supporting witnesses.

The testimony as to the money with which the credit payment was met is not

so convincing, but we think that the character of paraphernality was stamped on the title at the time Mrs. Hackney received the deed, having been bought for her separate account, the cash part being paid for with her separate funds, under her separate administration and control, and the credit portion not being beyond what she might reasonably expect to meet with her separate funds. We think it became her separate property.

The crop of 1918 was profitable and it is likely her one-fourth amounted to a large part if not all of the $300.00 balance due on the price; and according to her testimony she also had money left from cattle sales. But even if some of $300.00 balance was paid with the husband's money, this could not operate as a conveyance to the husband of what became her separate property when acquired.

## II.

The original petition states: "But it is also true that property which is purchased by the wife after marriage, with her separate, paraphernal funds, is her separate property and does not fall into the community."

Counsel claims that this is an erroneous statement of the law, which requires the wife to show not only that the funds invested were her separate, paraphernal funds, but that they were under her separate administration and control.

But the opinion elsewhere substantially states that Mrs. Hackney testified that the funds used to make the cash payment were the identical moneys received from the sale of her livestock and had been kept under her separate administration and control, having been kept in her armoir; and this testimony was accepted by the court as true.

Rehearing denied.