## No. 13,852.

SUCCESSION OF MRS. BRIDGET MANNING, AND MRS. MARY MANNING, ET AL. VS. JOHN BURKE, INDIVIDUALLY AND AS TESTAMENTARY EXECUTOR, ET ALS. (CONSOLIDATED.)

### SYLLABUS.

1. All property of whatsoever kind whether standing in the name of the husband, or that of the wife, or in their joint names, is presumed by the law to be community in character.
2. Even the earnings of the wife's industry and labor fall into the community.
3. And where a married woman, not separate in property, is engaged in trade, she is presumed, in the absence of proof to the contrary, to trade on the funds of the community and the assets in her hands are those of the community.
4. The legal presumption in favor of the community dispenses those claiming community rights or asserting community obligations from other proof, and it is incumbent on those denying the community and asserting the property or funds to be the separate estate of the wife to prove *affirmatively* and satisfactorily that the same is hers.

A PPEAL from the Civil District Court, Parish of Orleans—*Sommerville, J.*

---

*James B. Rosser, Jun.,* for Mrs. Mary Manning, wife of John P. Jones, and Miss Catherine Manning, opponents, Appellees.

---

*McCloskey & Benedict,* for Mrs. Kate Concaugh, Miss Kate McLaughlin, William McLaughlin and Francis Tomeny, Legatees, Opponents, Appellants.

---

*Edgar M. Cahn* and *Richard B. Otero,* for John Burke, Mrs. John

Burke, James Burke, St. Peter and Paul's Church, Appellants, and John Burke, Testamentary Executor, etc., *et al.,* Appellees.

The opinion of the court was delivered by

BLANCHARD, J.    This is a contest over a sum of money which was on deposit with the mercantile firm of Schmidt & Zeigler on the 30th of November 1898, at which time Patrick Manning died.

The money was on deposit in the name of Mrs. Bridget Manning, who was the wife of Patrick Manning.    The marriage between them had taken place in May 1860.

When Patrick Manning died no steps were taken to open his succession.    No property was standing in his name and there was no will.

His widow survived him about a year and a half, departing this life in June 1900.

After the death of her husband she drew $550.00 of the funds on deposit with Schmidt & Zeigler, and for the remainder, $3,500.00, a new certificate of deposit was issued to her, dated January 3, 1899.

This certificate was in her possession at the time of her death.    No other property was then standing in her name except a cemetery lot and tomb.

She left a last will and testament wherein she made bequests to her nephews and nieces and to others, and named John Burke, her nephew, as testamentary executor, with seizin and without bond.    The tomb she willed to John Burke, and she also designated him as residuary legatee.

She treated the money on deposit as hers individually, to be disposed of as she thought fit.

There had been no children of the marriage between herself and Patrick Manning.    Neither left at death either descendants or ascendants.

The will of Bridget Manning was probated and John Burke qualified as executor.    There were practically no debts.

Those named as legatees in the will claim under that instrument, and their contention is that the money on deposit with Schmidt & Zeigler was the separate, paraphernal property of the testatrix.

Mary Manning (wife of John P. Jones) and her sister Catherine Manning were the nieces and are the only heirs at law of Patrick Manning.

They contend the money on deposit with Schmidt & Zeigler at the time of their uncle's death was community property and that the one-

half thereof is inherited by them as his heirs. They make the same claim to the cemetery lot and tomb.

They instituted a separate suit asserting this contention, but the same was consolidated with the mortuary proceeding in the Succession of Bridget Manning, and the issue between themselves and the claimants under the will was tried there.

A final account was filed by the executor, making distribution of the $3500.00 which was on deposit with Schmidt & Zeigler when Bridget Manning died, but which the executor had withdrawn and placed in bank.

Various oppositions were filed. Among them, one by certain of the special legatees opposing the fees of the attorneys of the executor placed on the account at $750.00, and opposing the claim of John Burke and wife placed on the account as creditors for $500.00 for nursing the deceased and attendance upon her in her last illness. Another by Mary and Catherine Manning asserting their claims as heirs of Patrick Manning—the same as set up in their separate suit.

From the judgment rendered on these oppositions the legatees under the will, and John Burke and wife appealed.

In this court, however, John Burke and wife have, by plea, discontinued their appeal so far as their claim for nursing and attendance is concerned—maintaining it in other respects.

Neither the executor or his attorneys appeal, though both file answers here to the appeal.

In this court the issues are, by the pleadings and briefs, narrowed to the following:—

1st. The claim of the heirs of Patrick Manning for one-half of the estate standing in the wife's name, predicated on the presumption that it is a community asset.

2nd. The fees of the attorneys of the executor.

## I.

The heirs of the husband assert that the community estate consists of $4,050.00. This is made up by the $3,500.00 on hand when Bridget Manning died and the $550.00 which she drew out, of the moneys on deposit with Schmidt & Zeigler, after the death of her husband.

Their contention is that half of this sum, or $2,025.00, is due them.

The trial Judge sustained them in this, with the exception that he held the funeral expenses of Patrick Manning should be deducted from

their share. This left as a balance $1822.00 for which he gave them judgment.

We think this ruling correct.

The community of acquets and gains existed between Patrick Manning and his wife. There had been no separation of property.

At the time of the dissolution of a marriage all effects which both husband and wife reciprocally possess are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited.

This is the language of C. C. 2405.

Under the law, therefore, all property of whatsoever kind, whether standing in the name of the husband, or that of the wife, or in their joint names, is presumed to be community in character.

Even the earnings of the wife's industry and labor fall into the community.

Isaacson vs. Mentz, 33 La. Ann. 595; Ford vs. Brooks, 35 La. Ann. 157; Knight vs. Kaufman, 105 La. 35.

And when a married woman, not separate in property, is engaged in trade, she is presumed, in the absence of proof to the contrary, to trade on the funds of the community and the assets in her hands are those of the community. Pendergast vs. Cassidy, 8 La. Ann. 96.

The burden was on the heirs of the wife to show that the funds in question pertained to her separate estate, and not to the community.

The legal presumption in favor of the heirs of the husband dispensed them from all other proof (C. C. 2287), though the record shows they did not rest upon this exclusively.

It was incumbent on the heirs of the wife to show *affirmatively* that the money claimed was hers. Succession of Coste, 43 La. Ann. 144. They were required to show that the wife had means and their origin, and the actual investment of same—in this case the actual deposit of same (her separate money) with Schmidt & Zeigler.

The proof shows that the account of deposit of moneys with Schmidt & Zeigler by the wife was not opened until some twelve or thirteen years after her marriage. It began with a deposit of $300.00 in July 1873, and was increased by other deposits and interest until it reached the sum of $4,050.00.

The fact that the wife had $800.00, antenuptial earnings, at the time of her marriage, does not even suffice to raise a presumption that any

part of it went to make up the deposits with Schmidt & Zegler begun more than a dozen years later.

Nor is it shown that the $800.00 which the wife owned at marriage was received by her husband. Neither his estate nor that of the community can, therefore, be charged with it.

The presumption of law being that the money in question was community funds, and the *onus* being on the wife's legatees to rebut this and to show it was her separate property, the question whether it was or not becomes one of fact.

On this issue of fact the conclusion of the trial Judge was adverse to the legatees. Our consideration of the testimony and appreciation of its value has led us to a like conclusion. It would subserve no useful purpose to enter upon a discussion of the evidence, especially so since that is done in a written opinion of our learned brother of the District Court, which is found in the record.

The cemetery lot was bought and the tomb erected after the dissolution of the community. It was willed by Mrs. Manning to John Burke and this bequest was rightly sustained. The heirs of the husband have no just claim to it.

## II.

With regard to the fees of the attorneys of the executor, the charge of $750.00 against an estate inventoried at only $3,500.00 is excessive. The trial Judge reduced it to $300.00. There is no demand made here to reduce it below this figure.

This fee must be held a charge against the half of the funds pertaining to the legatees. It was earned in the main in resisting in their behalf the demand of the heirs of the husband. There having been no debts of the community and none against the separate estate of Patrick Manning, there was no reason in burdening the community estate or his estate with the expenses of an administration. The will of the dead wife could operate only on her share of the community funds, and its probation and execution enured only to the benefit of her legatees and the creditors of her succession.

Judgment affirmed.