[No. 10515. Department Two. May 6, 1913.]

PASCO RECLAMATION COMPANY, *Respondent*, v. CHARLES RANKERT, *Appellant*.[1]

WATERS AND WATER COURSES—CHARGES FOR WATER—LIABILITY—CONTRACT—DEED—CONSTRUCTION. An annual charge of $5 per acre entitling a grantee in a water deed to use 18 acre-inches of water, was intended as a maintenance charge, payment of which was not dependent on the use of the water, notwithstanding a stipulation that the grantee should pay "for the use of such water" and should, on or before the first of March, give notice of the quantity of water he wished to use during the ensuing irrigation season, where the initial contract required such annual payment to be made at stated times, regardless of the amount used, and gave a lien therefor, and provided that for water in excess of 18 acre-inches, the user should pay 35 cents per acre-inch additional.

SAME — CONTRACT FOR WATER — PERFORMANCE — CONSTRUCTION — "GRAVITY" FLOW. An irrigation company performed its contract to deliver water to such an elevation as to permit it to be conveyed to the highest point of defendant's land by "gravity" flow, where, although the point of delivery was 14 feet lower than the highest point of defendant's land, the pressure in the pipe was such as to elevate the water to the highest point by a pipe line without other aid than hydraulic pressure, and by the erection of a standpipe 16 feet high could be conveyed there by flumes; since the contract did not call for gravity flow "without confinement" or "by means of open ditches or flumes."

Appeal from a judgment of the superior court for Franklin county, Holcomb, J., entered March 12, 1912, upon findings in favor of the plaintiff, in an action to foreclose a lien for water charges. Affirmed.

[1]Reported in 131 Pac. 1143.

*H. B. Noland*, for appellant.

*Driscoll & Leonard* and *Parker, Richards & Fontaine*, for respondent.

ELLIS, J.—In this action the plaintiff seeks to foreclose a lien upon certain lands of the defendant for annual water charges for the year 1911, claimed to be due under a contract and a water-right deed made in pursuance thereof. On June 26, 1909, the defendant, as party of the first part, and the plaintiff, as party of the second part, made a contract in duplicate, wherein the plaintiff agreed to construct an irrigation system in the vicinity of the defendant's land sufficient to perpetually supply water between April 1st and October 1st of each year to the extent of 1½ acre feet a year, and to convey to the defendant a water right to serve one-half of his land described in the contract. In consideration of this agreement, the defendant agreed to convey the other half of his land to the Pasco Fruit Lands Company, a subsidiary corporation of the plaintiff, and party of the third part to the contract. The contract, among other things, provided that the first party should pay to the second party an annual charge for the water of $5 an acre, and that the second party should have a lien upon the land for which water-rights were to be furnished for this annual charge; and further declared "that when the party of the second part . . . shall be able to deliver the water to a point within one mile of said land . . . and to such elevation as will permit the water to be carried to the highest point upon said land by gravity flow, it shall be deemed to have completed said system as herein provided for."

On February 28, 1911, the manager of the Reclamation Company, stating that it had complied with the terms of the agreement, demanded and received from the defendant a deed to the Pasco Fruit Lands Company, conveying to it the land which by the contract was to be so conveyed on completion of the system, and at the same time delivered to the

defendant the water-right deed to serve the other half of the land. This deed conveyed a water-right in perpetuity to 24 acre-inches of water an acre, or so much thereof as necessary to irrigate the land, during the irrigation season from April 1st to October 1st each year. This right was subject to enumerated conditions, among them the following, which we deem material to the present inquiry:

"(2) Said water shall be delivered at a point not greater than one mile distant from the lands herein described, and at such elevation as will permit such water to be conveyed to the highest point on said lands by means of gravity flow. The works and conduits necessary to conduct said water to said lands from such point or points of delivery shall be constructed and maintained by the water user. . . .

"(6) The water user shall, on or before the *1st day of March*, each year, file with the company a notice in writing specifying the quantity of said water which he wishes to use during the ensuing irrigation season, and upon filing such notice he shall be entitled to the use of such specified quantity only during such season.

"(7) The water user shall pay to the company at its office at Pasco, Washington, for the use of said water, annual charges as follows: Five Dollars ($5) per acre for each and every acre of the lands herein described, which payment shall entitle said water user to the use of eighteen (18) acre-inches of water per acre, or so much thereof as may be necessary, for the irrigation of said lands; and for all water used in excess of 18 acre-inches per acre he shall pay Thirty-five (35) cents per acre-inch or fraction thereof, for each and every acre of said lands.

"(8) Beginning with the year 1911, the charges mentioned in the foregoing paragraph shall be due and payable: One-half on or before *March 15th* and the balance on or before *June 15th*, in each year.

"(9) The company shall have a lien upon the lands hereinbefore described for the annual charges mentioned in paragraph seven (7) thereof. . . ."

The cause was tried to the court, findings were made in favor of the plaintiff, a judgment for $45 and interest from June 15, 1911, was rendered against the defendant, and a

decree foreclosing the lien therefor and ordering a sale of the land to pay the same was entered. The defendant appealed.

There are many assignments of error, but they are all argued under two heads and may be so considered.

(1)    The appellant contends that the contract and water-right deed created no obligation on his part to pay any annual charges until he should begin to use the water. The argument is that paragraph 6 of the water-right deed, requiring the "Water-User" on or before March 1st of each year to give notice specifying the quantity of water he wishes to use during the ensuing irrigation season, and paragraph 7, providing that he shall pay "for the use of said water" the annual charges thereinafter designated, evidences an intention that the charges are for the actual use of water, and not for the right to use it, and that the right to use the water in perpetuity had already been paid for by the conveyance of half of the appellant's land. This last contention may be disposed of at once. It is obviously unsound, since to give the conveyance that force would make it a perfect defense to a claim for payment for any amount of water actually used up to the 24 acre-inches an acre specified in the water-right deed, and would render all remaining provisions in that deed as to payments absolutely meaningless, though express conditions of the grant. The respondent contends that the provision for the payment of the annual charge of $5 an acre was intended as a maintenance charge entitling appellant to use 18 acre-inches of water an acre, and that this payment was not dependent upon actual use, but was for the privilege to use that amount of water whether the privilege was actually exercised or not.

The question presented is one of intention to be determined, not by isolated phrases in the water-right deed alone, but by all pertinent recitals, both in the deed and in the initial contract referred to in, and made a part of, the deed. The initial contract provided "that said first parties . . . shall pay to the said party of the second part . . . an an-

nual charge for said water of $5 per acre  .  .  .  one-half thereof to be paid on or before March 20th, and one-half on or before June 20th of each year," and again it provided that "said party of the second part  .  .  .  shall have a lien upon the real estate for which water rights are to be furnished hereunder for said annual charge of $5 per acre, and said second party shall have the right, at its option, to shut off the water from the lands of any user who shall be in arrears for maintenance charges," and may also "enforce any lien which shall have attached to said lands on account of such charges."   Nowhere in the initial contract do we find any words indicating that actual use of water shall be a prerequisite to the annual charge of $5 an acre or to the attaching of the lien therefor.   On the contrary, we find the charge in the above quoted provision referred to specifically as a maintenance charge.   A reading in context of the different provisions of the water-right deed leads to the same result.   Paragraph 7 of the deed provides (we italicize for emphasis), that the water user shall pay "for the use of said water, annual charges as follows:   Five ($5) per acre .  .  .  which payment *shall entitle said water user to the use of* 18 acre-inches of water per acre *or so much thereof as may be necessary* for the irrigation of said lands, and for *all water used* in excess of 18 acre-inches per acre, he shall pay thirty-five cents per acre-inch or fraction thereof. . . ." The words of this paragraph relied upon by the appellant, "for the use of said water," while introducing the subject of annual charges, are not controlling of the specific provisions for payment immediately following.   That the payment of $5 an acre is not dependent upon the amount of water actually used is obvious since the payment is clearly the same, whether much or little is used, up to the limit of 18 acre-inches.   That this payment may not be avoided by refusing to use any water is equally obvious, since the payment of $5 an acre is to *entitle* the water user to the use up to the 18 acre-inches.   This is made plain by the further pro-

vision for payment at thirty-five cents an acre for *all water used* in excess of that limit. It seems clear that actual use or the amount used are only important factors when the minimum payment of $5 an acre is to be exceeded, and that the parties intended that the respondent should be ready to supply, and the appellant should be entitled to take, at least 18 acre-inches of water, and that the appellant undertook to pay the $5 an acre as a minimum annual charge whether he took none, any part, or all of that amount. This construction is made unavoidable by paragraph 8. The provision therein that "beginning with the year 1911, the charges . . . shall be due and payable," would be useless and meaningless if all payments were to be dependent upon actual use. While not so named in the water-right deed, this payment of $5 an acre was clearly intended as in the nature of a maintenance charge and was so designated in the initial contract, which was made a part of the deed. If the respondent was ready to deliver the water, the appellant cannot avoid the payment of this charge by refusing to take it.

In *Fresno Canal & Irr. Co. v. Dunbar*, 80 Cal. 530, 22 Pac. 275, the contract was in some respects analogous to the contract here. By the contract the water company sold to the water user for a money consideration a water-right for his land, and the water user agreed to pay an annual charge "after the water shall first be brought to the land." The contract also provided for a lien on the land to secure the annual payments. The court held that the defendant could not avoid the lien by a failure to take the water.

In *Purser v. Baker*, 129 Cal. 607, 62 Pac. 190, relied upon by appellant, the contract provided that the defendant should pay "annually the sum of $2 per acre for the use of water on the above described land . . . said water shall be used by the party of the second part for no other purpose than for the irrigation of said land and for domestic purposes on said land during the irrigation thereof . . . nor shall the party of the second part be re-

quired to pay any sum for the use of water for the year or years of crop failure by reason of an insufficient supply of water." There was, so far as the opinion shows, nothing in the contract requiring the defendant to take any amount of water or to pay a minimum charge for the privilege of using any amount. In that case it was the clear intention of the contract that pay should only be required for water actually and beneficially used.

It would be a bootless task to further review the authorities cited. They merely emphasize the fact, shown by the two we have noticed, that each contract must be construed according to its terms. The contracts in the other cases cited are so widely variant as to be of little illustrative aid.

(2) It is next contended that the water was not delivered or tendered at any point within one mile from which it could be carried to the highest point of the appellant's land by gravity flow. The evidence.is conclusive that the respondent has constructed its irrigation system; that its main pipe line runs to within much less than a mile of appellant's land. It is conceded that at a point within 2,290 feet of the appellant's land, the ground elevation of the pipe line is 412 feet, while the ground elevation of the highest point of the appellant's land is 426 feet. It was proved without contradiction that the pressure in the pipe line at the point mentioned will raise water to an elevation of 440 feet, and that a pipe line connected with the respondent's main pipe line at this point would therefore carry the water to the highest point of the appellant's land. It was also proved without contradiction that, by the installation of a standpipe, sixteen feet high on the respondent's pipe line at the point in question, water could be carried by means of a flume to the highest point of the appellant's land.

The evidence showed that the appellant and others, on March 10, 1911, entered into an agreement with the respondent authorizing the respondent to construct a lateral pipe line running within 687 feet of the appellant's land, at which

point the ground elevation is 424 feet, the appellant and others to be served by this lateral, agreeing to pay the actual cost of construction, and that this lateral has been constructed. It was also proved that on March 17, 1911, the appellant, and others to be served thereby, entered into a similar agreement with the respondent to construct a sublateral connecting with the lateral above mentioned, at the point nearest to the appellant's land and running directly to and along the north line of the appellant's land, which pipe line would carry the water to the highest point of the appellant's land, but that this sublateral has not been constructed because appellant and others to be served by it have refused to pay for it. Appellant's refusal was not on the ground that piping would not meet the terms of the water-right deed, but on the ground that the respondent's estimate of the cost was too high. The evidence further shows that by the construction of a standpipe five feet high at a point on the lateral pipe line already constructed within 687 feet of the appellant's land, the water can be delivered by means of a flume and ditch to the highest point of the appellant's land. The appellant has never signified a desire to take any water in any way, and has never indicated to the respondent at what point upon its pipe line or upon the lateral he desires delivery to be made. The respondent expresses a willingness either to allow the appellant to connect with its main line or the lateral above mentioned by a pipe line, or to itself construct the necessary standpipe at either of these points for delivery into a flume. We think that, under the evidence, the respondent has complied with its contract and with the terms of the water-right deed.

A flow of water through a pipe line, without other aid than the hydraulic pressure furnished by gravity, in the absence of other qualifying words, such as "without confinement in pipes," or "without the aid of pressure," or "by means of open ditches or flumes," would be included in the term "gravity flow." By the two agreements of March 10th and March

17th, above referred to, the parties themselves have so construed the initial contract and the water-right deed. If the respondent has made an overestimate of the cost of laying these pipes, which was the only objection made by the appellant to paying his share of the cost, then the appellant should construct the sublateral pipe line carrying the water to his land for himself, since by the contract and paragraph 2 of the water-right deed he undertook to construct and maintain the works and *conduits* necessary to conduct the water to his land from the point of delivery. We are not impressed by the argument that if the use of a standpipe for the purpose of delivery through a flume be permitted at all, standpipes requiring flumes of an unreasonable height might be constructed. A practical delivery which would permit the use of flumes of a reasonable height would meet the terms of the contract, since there is no agreement that the water shall be so delivered as to be conveyed to the highest point on the appellant's land in ditches without the use of flumes. The evidence fairly shows that the only reason the water has not been delivered to the appellant is because of his failure to designate any point from which he desired to take the water, and his failure to construct the necessary conduit thence to his land, as he agreed to do. The respondent can do no more than it has ·done until the appellant signifies where and how he desires to take the water.

The judgment is affirmed.

CROW, C. J., MAIN, FULLERTON, and MORRIS, JJ., concur.