## McHALE v. GOSHEN DITCH COMPANY

(No. 1906; December 17, 1935; 52 Pac. (2d) 678)

For the appellant there was a brief and an oral argument by *Edward T. Lazear,* of Cheyenne.

For the defendant and respondent there was a brief by *Reid & More,* of Torrington, and an oral argument by *Erle Reid.*

BLUME, Justice.

This is an action brought by the plaintiff Mattie A. McHale against the Goshen Ditch Company for damages for failure to furnish the plaintiff irrigation water during 1928 to 1932 inclusive. The Ditch Company denied the right of plaintiff to damages and also filed a counterclaim for assessments due from plaintiff, and from her land, for maintenance charges. The court found against plaintiff on her demand, and found in favor of defendant on its counterclaim in the sum of $349.50, declared this amount to be a lien against plaintiff's land, and ordered that it be sold to satisfy the amount due. From this judgment the plaintiff has appealed. The facts, in brief, are as follows:

The defendant is a ditch company. Judging from the record, its capital stock is all owned by farmers owning land under the line of its ditch and receiving water therefrom. On November 26, 1929, it was sold to Sarah A. Lacy, predecessor in interest of the plaintiff, a perpetual water right and ditch right to irrigate approximately 45 acres of the south half of the southeast quarter of Sec. 33, T. 23 N., R. 62 W. of the Sixth P. M. The purchaser under the contract, and her heirs and assigns, agreed to pay the proportionate part of maintaining the irrigation works of defendant; that the amount thereof should be a prior lien on the land, which might be foreclosed to enforce the amount due, and that the ditch company "may also shut off and cease the supply of water from all of said lands until the amounts due and owing for the said pro-rate shares shall have been fully paid." Later, in 1924 and 1925, defendant issued to plaintiff's predecessor in interest certificates for shares of the capital stock of the ditch company, one for 39 shares, and one for 45 shares, the certificates containing the following clause: "The shares represented by this certificate are assessable by

a vote of the shareholders or by a vote of the board of directors of the company when authorized by the stockholders for their proportionate part of the costs of operating the company's business and maintaining and operating the company's ditches and reservoirs and storage works and their proportionate part of the construction of any betterments undertaken by the company, provided that no assessments shall be due until at least ten days after it is levied and that no stock shall be entitled to its storage and delivery privileges against which there is levied and outstanding and unpaid any assessment."

The ditch of defendant, to reach plaintiff's land, comes from the south. While the written records do not show where the water was to be delivered to the latter's land, it seems clear that defendant's ditch was intended to be built substantially up to plaintiff's land, the ditch running in a semi-circle, bent westward for about a mile before reaching the land. This part of the ditch was not, until 1932, in condition to carry much water. Some of the witnesses testified that it ran up-hill part of the way. In any event the witnesses are agreed that it was not in good condition to carry water of any substantial amount. During 1924 and 1925 the land was irrigated by carrying water through a neighbor's ditch, and thence through a private ditch, constructed by plaintiff's predecessor in interest. But this method was cut off during 1926 by a railroad track, extended to Yoder during that year. The land was not irrigated during that year, nor in any subsequent year up to the commencement of this suit. Assessments for maintaining defendant's irrigation works were made against plaintiff's land each year. Those made up to and including the year 1925 were paid. An assessment of $33.60 was made in April, 1926; an assessment of $63.00 in February, 1927; an extra assessment, for special work, in June, 1927, in

the amount of $196.56. Assessments were also made during 1928 and 1932 both inclusive. The time when they were made does not appear, but if we may credit counsel's statement on the oral argument, they were made early in each year before the irrigation season started. They were due ten days after they were made. None of these assessments made since 1926 have been paid. Plaintiff bought the land and the stock issued to Mrs. Lacey in December, 1927, and attempted to get the ditch company to deliver water for the land during 1928. But he did not succeed. The defendant asked that the delinquent assessments for 1926 and 1927 be paid. Plaintiff refused to pay them. Efforts to settle the controversy were made by the parties from time to time, but were not effectual. Some other facts will be stated hereafter. The parties will be referred to as in the court below.

1. We shall first consider the counterclaim of the ditch company. As stated, no water was delivered to Mrs. Lacey, then owner of the land, during 1926 and 1927, but assessments were made against her and her land. It is the non-payment of these which lies at the basis of the trouble between the parties. Plaintiff claims that inasmuch as the ditch company was unable to deliver any water, due to the fact that the ditch was never constructed so as to be able to do so, no assessments for these years can be collected. The ditch company counters by saying that no demand for the delivery of water during these years was ever made. It is doubtful that a mere demand would have been anything more than an idle ceremony in the face of the conceded fact that the ditch was not in proper condition. Allen v. Land Co., 25 Cal. App. 206, 143 Pac. 253. There are cases which hold that a lack of demand will relieve the ditch company from damages for not delivering water. 67 C. J. 1392. These cases are based

on a statute or a contract requiring such demand. They deal with a situation entirely different from that here. In them the water user sought to hold the ditch company liable for damages for non-delivery of water, though no demand therefor was made, and not with a situation like that at bar where the ditch company is seeking to recover from the water user for assessments without giving anything in return. Neither our statute, nor the contract in the case at bar, makes a demand a requisite for the right to have the water delivered. It may be that even in the absence of a statute or contract, a water user, in order to recover damages for non-delivery of water, should, in view of the fact that there is no definite time when water is to be delivered, be required to first make a demand. But we have no such case here. We have here a reciprocal agreement, on which the defendant seeks to recover without performance on its part or any substitute therefor. The rule is general that in order that either party to a contract may be able to sue the other, each must show performance or tender of performance. 13 C. J. 627, 662. There was no performance here, nor tender of performance. If it must be said that these principles cannot strictly apply to a ditch company because it is situated somewhat differently from an individual, still we have here a case where the defendant was unable to perform, due to the fact that the ditch had never been constructed of sufficient dimensions. Pasco Reclamation Company v. Rankert, 73 Wash. 363, 131 Pac. 1143, is in point. It involved a contract essentially the same as the contract in the case at bar, and it was said in that case that the parties intended that the ditch company should be ready to supply, and the water user ready to take the water, and that, if the ditch company "was ready to deliver the water, the appellant (the user) cannot avoid the payment of this charge by refusing to take it." So in

Fresno Canal & Irrigation Co. v. Dunbar, 80 Cal. 530, 22 Pac. 275, the court said that the water company "was entitled to recover for the water from the time it was prepared to furnish it at the box or gate to be put in by it." The converse of this is that if the ditch company was not prepared to furnish it, it would not be in position to recover. One of the parties to a contract cannot exact the other party performance when he himself cannot perform. Anglim v. Sears Roebuck Shoe Factories, (Mass.) 151 N. E. 313; Trembath v. Berner, 208 App. Div. 822, 203 N. Y. S. 530, affirmed 240 N. Y. 618, 148 N. E. 729; Edgerton v. Taylor, 184 N. C. 571, 115 S. E. 156; Alexandria etc. Ry. Co. v. Lumber Co., 152 La. 399, 93 So. 199; Risinger v. Cheney, 7 Ill. (2 Gilman) 84; McCormick v. Tappendorff, 51 Wash. 312, 99 Pac. 2. In Browning v. Ry. Co., (Mo.) 188 S. W. 143, the court said:

"The undertakings of parties to a contract are mutual and dependent, and before either can recover for breach, he must do more than show default of the other—he must show either performance or an offer to perform—and in order to show the latter he must show his readiness and ability to perform at the appointed time and place. These are conditions precedent to the right of either party to maintain an action for the default of the other, and until they are complied with the default is mutual and non-actionable. Davis v. Gilliam, 14 Wash. 206, 44 Pac. 119; Sweetser v. Mellick, 4 Idaho 201, 38 Pac. 403; Iroquois Furnace Co. v. Hardware Co., 201 Ill. 297, 66 N. E. 237; McPherson v. Gale, 40 Ill. 368; Nels v. Yocum, 16 Fed. 168."

The rule as otherwise stated is, that in order that one of the parties to a contract may sue the other for the latter's default, he must be ready, able and willing to perform his part of the contract. Browning v. Ry. Co., supra; St. Louis Union Trust Co. v. Van Raalte, 214 Mo. App. 172, 259 S. W. 1067; Condorodis v. Kling,

33 Ohio App. 452, 169 N. E. 836; Western Grocery Co. v. Oversea Co., 28 F. (2d) 518; Stern v. McKee, 70 App. Div. 142, 75 N. Y. S. 157; Paige on Contracts (2nd Ed.) Sections 2969, 2970. In the case at bar, the defendant was not, for a number of years, able to deliver the water, and after it was able, it was not ready or willing to do so. Hence it cannot recover from plaintiff in that situation.

In view of the fact that the non-payment of the 1926 and 1927 assessments lies at the basis of the trouble herein, we should, perhaps, call attention to some of the cases which deal with the subject of shutting off water for past due assessments. It is stated in 67 C. J. 1267 that the remedy of refusing to deliver water cannot be used as a means of collecting a disputed installment of water rent, and that a water company "cannot, as a condition precedent to supplying" a water user, require him "to pay an old or disputed bill for water furnished him at some previous time," since it ought not to be permitted to become both judge and jury. The decisions apparently are not altogether uniform on this point. See 67 C. J. 1269, Sec. 823. And it may be—a point which need not be decided— that a distinction should be drawn between use of water in a city for domestic purposes and water used for irrigation. It is held in California and Idaho that a contract, or regulation, that water for irrigation may be refused to a consumer until he pays all assessments for past years is null and void, where the ditch company is, by statute, given another remedy. Crow v. Canal & Irrigation Company, 130 Cal. 309, 62 Pac. 562; Shelby v. Ditch Company, 10 Idaho 723, 80 Pac. 222; Parrott v. Land & Water Company, 32 Idaho 759, 188 Pac. 451; Reynolds v. Canal Company, 36 Idaho 622, 213 Pac. 344. Comparing the statutes of these states with section 122-1208, Rev. St. 1931, it would seem that these decisions are in the main based upon

the fact that public policy requires that the waters of the state should be put to the highest possible use, and that any contract or regulation which defeats that policy, when another remedy is available should not be countenanced. In the case at bar, the defendant not only had the remedy given it under Sec. 122-1208, supra, of collecting past due assessments by an ordinary action, but it had, in addition, a remedy by contract, to enforce them by an action to foreclose its lien. The public policy in this state would seem to be the same as in other states where irrigation is necessary. Water rights are attached to land. Sec. 122-401, Rev. St. 1931. All owners of a ditch, canal or reservoir having a surplus of water and furnishing the same to others from any ditch, canal or reservoir "shall be considered common carriers." Sec. 122-421. The ditch company in this case presumably had the water appropriated for, and attached to, plaintiff's land, on hand for use. Other detailed provisions have been made by our statutes for the conservation of the waters of the state and for the application thereof to the most beneficial use. It is, accordingly, a question of considerable moment whether the decisions above mentioned, from California and Idaho, ought not to be followed in this state. It is not, however, necessary to decide the point at this time.

2. We next turn to plaintiff's claim for damages. Her duty was to pay the assessments properly payable by her. While she made a commendable offer in connection with the settlement of the controversy relating to the 1926 and 1927 assessments, she did nothing in connection with the assessments for the current years. She neither performed in that respect, nor did she offer to perform. The testimony merely shows that she would have been glad to pay them, if she had been furnished with water. She evidently believed that the

furnishing of water was a condition precedent, which was required to be fulfilled before she could be called on to pay. But that was not true. If one duty had to be fulfilled before the other, which we need not decide, it was the duty to pay, if we accept as true that the assessments for the current year were payable before the irrigation season. See 269, Restatement of the Law of Contracts. We have already stated that, in order for a party to a contract to be able to sue thereon, he must do more than show default of the other. Where both parties to a contract are in default, there can be no recovery by either against the other. Chicago Washed Coal Co. v. Whitsett, 278 Ill. 623, 116 N. E. 115. The rule that parties, in order to be able to sue on a contract with reciprocal and dependent covenants, must, unless excused, show performance or tender of performance on their part (13 C. J. 627, 662) is based on sound premises. Parties ought not to be permitted in such case to rush headlong into a lawsuit merely because the other party is in default. They should come into court as nearly free from blame as the circumstances permit. Their conduct may solve or minimize the strife. If the plaintiff in this case had fulfilled her part of her contract in so far as she could, the controversy herein might have been settled long ago. It is held that, in the proper case, an injunction may issue to compel a distributor to supply water for irrigation to a consumer. 67 C. J. 1435. It is elementary that one seeking equitable relief must do equity, and it is clear that in such case a court would not grant relief, unless the consumer would pay the amount properly payable for the delivery of water. See 21 C. J. 400, 401; 67 C. J. 1270, notes 6, 7, 8. So it has been held that an action for mandamus lies. 67 C. J. 1434. And there is no doubt that if, with the defendant not able, ready or willing previously to deliver water, the plaintiff had, in 1928 or in any subse-

quent year, tendered the assessment for the current year, though, perhaps, upon condition that the defendant should deliver water (Paige, Contracts, (2nd Ed.) Sec. 2867), she would have been entitled to that remedy. Yet it would seem that the court should not grant relief in such case, any more than in a suit in equity, unless the plaintiff performs or tenders performance of his or her part of the contract. See 67 C. J. 1266, note 37; 1268, note 80. And no good reason exists why the rule should be different in a case like that at bar, particularly where, as is probable here, the assessment was due before the time when the water was to be delivered. It is said in 67 C. J. 1266 that the right of the citizen to be supplied with water by a public company is qualified by the duty of the citizens to pay or tender the customary rents. Simply because the defendant in this case is not a public company in the full sense of that term, should not make any difference. The situation here seems to present a case very much like one where one of the parties, as a condition for delivery of property, demands payment of a greater sum than that to which he is entitled. It is stated in 13 C. J. 635 that "a formal, technical tender is not dispensed with by the mere assertion without more, of a lien or claim in excess of the amount actually due, for a tender of the proper sum might be accepted." The cases cited bear out the text. In Idaho the statute requires a water user to give security for the payment of water rental. Speaking of the duty of such user, in order to be entitled to the delivery of water, the court said in Bardsly v. Irrigation & Land Company, 8 Idaho 155, 67 Pac. 428:

"But before he (the water user) could maintain a suit he must show that he not only had offered to, but was then ready and willing to give the canal company reasonable security for the payment of the water rent. He must pay reasonable compensation for the water,

or give reasonable security therefor, before the canal company can be compelled to deliver him water."

And again, on rehearing (67 Pac. 430), the court said:

"The right of a party,, therefore, to water for each year, depends upon the user's complying with the statute as to payment of compensation, or tender of security therefor, and until such compensation, or security therefor, is actually tendered to the owner of such irrigation canal or works, no action has accrued of which the courts will take cognizance."

The courts in states where irrigation is prevalent have announced the same or a similar rule, at least in cases where assessments had been actually levied and were due before the irrigation season, which we take to be the fact in this case. 67 C. J. 1392. The decisions, it is true, are based upon statutory provisions. But they seem to state a rule of the common law. Ditch companies are ordinarily common carriers, and it is well known that such carriers are not bound to transport goods without the prepayment of carriage charges, unless they waive it. Paige, supra, Sec. 2956. Even though in this case, the defendant company cannot be said to be a common carrier in the full sense of that term, its relation thereto is so close that the same rule would seem to be applicable. Some of the cases relating to *concurrent* covenants appear to make actual, formal tender unnecessary, holding it sufficient to show readiness and willingness to perform and notification thereof to the other party. Paige, supra, 2968. It would seem to be doubtful that the contract in the case at bar should be construed to be "concurrent" in that sense, at least if we may take it to be true that the assessments were payable before the irrigation season started. See Sec. 269 of the Restatement of the Law of Contracts. It is not, however, necessary to decide this point, inasmuch as it has not been shown

that plaintiff complied even with the modified rule here stated. See also 62 C. J. 672, 673. No person, of course, is compelled to do a vain and idle thing. A tender may be waived or excused (13 C. J. 662-665), but that, it seems, should be clear. Paige, supra, 2872; Williston, on Contracts, page 1465, note 78. In Hoyt v. Sprague, 61 Barbour 497, the court said:

"The true rule I take to be this: that the mere assertion unaccompanied by any other act, of a lien greater in amount than the lienor is entitled to, will not obviate the necessity of a tender; for it may be that the right amount would be accepted; but when, as here, there is an absolute refusal to deliver up property unless a claim to which the party is not entitled is discharged, so that it appears that a lien claimant says, in effect, do what you will; tender any amount you please; unless it be the whole of my unlawful demand, I will not accept it, nor surrender your property, then the law dispenses with the idle ceremony of making a tender which the claimant, in advance, declares he will not accept, and an action may be brought immediately."

See Rubber Co. v. Lawer Supply Co., 35 Wyo. 283, 248 Pac. 825. Williston, on Contracts, Sec. 1819, states that the matter of tender and whether it is waived or excused "should be dealt with rather as one of evidence justifying certain inferences to be drawn from the creditor's attitude in each case than as an absolute rule of law." The evidence in this case fails to show the character of refusal above indicated. To illustrate the inconclusive character thereof, S. A. McHale, who acted for plaintiff in all matters, testified, for instance, that at one time of the negotiations between him and the officials of the defendant, they neither refused nor agreed to fix up the ditch. On the whole the evidence indicates a failure or neglect to deliver the water mainly on account of the lack of money to do the necessary work. Had the plaintiff tendered the assessment of the current year, it might have been accepted,

and the defendant company might then have made an effort to have fixed the ditch. In Parrott v. Land & Water Co., 32 Idaho 759, 188 Pac. 451, it was held that a demand for past due assessments did not obviate the necessity of giving security for the payment of the assessment for the current year—that being permitted to be given in place of the actual tender of the money. The case is closely in point, and would seem to require our holding, under the evidence, that plaintiff was not excused from tendering performance merely because defendant wanted past assessments paid up. Nor is it, we believe, a sufficient excuse because the ditch was not then in condition to carry the water. If it were shown that the defendant could not have delivered the water under any circumstances, that would be different. Inability of that kind doubtless would excuse tender of performance. 62 C. J. 658; 13 C. J. 662. But that is not shown to be the situation here. The main difficulty, as stated, was the lack of money. Plaintiff's assessment for the current year would have helped. The testimony shows that it would have cost from $100 as a minimum and $300 as a maximum to have put the ditch in proper condition. Plaintiff's tender of performance might have led to the discovery of the Idaho and California rule above mentioned, and might well have caused the defendant company to have borrowed whatever money was lacking. Thus the dispute, now of eight years' standing, might have been easily settled.

We think, accordingly, that neither the plaintiff nor the defendant has shown a cause of action for recovery. That part of the judgment herein finding against plaintiff on her cause of action is, accordingly, affirmed, and the judgment in favor of defendant on its counterclaim is reversed, and the cause remanded to the trial court with direction to dismiss such counterclaim. The

costs in this court will be equally divided between the parties, except that none will be taxed for the briefs.

*Affirmed in part, reversed in part, and remanded with directions.*

KIMBALL, Ch. J., and RINER, J., concur.