VINING, et al. *v.* SMITH.

Apr. 7, 1952.

No. 38345 (58 So. (2d) 34)

**Morse & Morse**, for appellants.

853

Williams & Williams, for appellee.

**Hall, J.**

Appellee brought this suit by attachment in chancery against C. L. Vining and Mrs. C. L. Vining, residents of the State of Louisiana, and Lee White, doing business under the name of J. B. White Motor Co., a resident of Mississippi, as garnishee, seeking a recovery of damages against Vining and wife and seeking a lien to secure the same upon an automobile in possession of the garnishee.

The chancellor awarded appellee a recovery of $565 for personal injuries and damages to his automobile against Vining and wife and subjected the proceeds from sale of their automobile to the payment thereof, and this appeal is from that decree.

The basis for the decree was a finding of negligence in the operation of the Vining automobile by Mrs. Vining as a result of which the same collided with an automobile owned and operated by appellee. Appellants contend first that there was no showing of negligence and that the collision between the two cars was an unavoidable accident. Mr. and Mrs. Vining reside in Sondheimer, Louisiana. Mrs. Vining has a sister who resides in Pearl River County, Mississippi. This sister had a child who needed to be carried to a hospital in Jackson and Mrs. Vining, at the time of the collision, was en route to the home of her sister for the purpose of carrying this child to the hospital. She was traveling south on Highway 11 and had entered the corporate limits of the Town of Poplarville at a speed, according to her own admission, of 45 to 50 miles per hour. It was shortly after dark, there was a drizzling rain, and the pavement was slippery. Without reducing her speed she entered a curve to her left and her automobile was traveling on the east side of the center of the highway. This she admits. When confronted by the automobile operated by appellee traveling north she made an effort to pull back to her side of the highway but was unsuccessful in doing so and struck appellee's automobile at a time when he had pulled partially off on the shoulder of the road on the east side thereof. She contends that the reason she was unable to pull back to the west side of the center of the highway was that the steering mechanism on her automobile would not function, and that, for this reason, the collision was unavoidable and that the chancellor should have so found. We are not impressed by this argument for two reasons. The first is that the chancellor was justified in finding that Mrs. Vining was negligent in driving her car on the

wrong side of the highway in a curve in a drizzling rain on a slippery highway. Sections 8181 and 8182, Code of 1942; West v. Aetna Insurance Co. of Hartford, Conn., 208 Miss. 776, 45 So. (2d) 585. ▮▮ The second reason is that the proof shows that the Vining car was inspected by an expert mechanic immediately after the collision and no defect was found in the steering mechanism and it was then working efficiently.

It is next contended that the chancellor erred in awarding a recovery against Mr. Vining since he was not in the automobile with his wife at the time of the collision. Appellant relies on a number of Mississippi decisions to the effect that the lex loci delicti controls in determining the question of negligence, and other Mississippi decisions to the effect that the "family purpose doctrine" as to the operation of automobiles is not followed in this state, as a consequence of which they contend that the husband is not liable for the negligence of his wife. We think, however, that appellants misconstrue the holding of the chancellor and the contention of appellee as to the liability of the Vining automobile for appellee's damage. ▮▮ It is true that whether Mrs. Vining was negligent is a question to be determined by the Mississippi law, and in the preceding paragraph here we have applied that law. ▮▮ However, the State of Louisiana has a community property law which fixes the liability of the community property for torts committed by either spouse. It can hardly be seriously contended here that the automobile operated by Mrs. Vining was not community property. While on direct examination she disavowed any interest in the automobile, nevertheless on cross-examination she was asked whether it was community property under the law of Louisiana and she said "I feel like it is mine and Mr. Vining's." The evidence is undisputed that the automobile was habitually used by both Mr. and Mrs. Vining and that Mrs. Vining used it at any time she desired even though the husband was not present. On this occasion it was shown that he was absent from

home in connection with his business and did not know that she was making the trip to Mississippi, but the whole course of action between them shows that she had his implied consent to use it at any time and for any purpose she desired. In the early case of Adams v. Golson, 187 La. 363, 174 So. 876, 879, the Supreme Court of Louisiana laid down the rule that "in order to hold the husband liable as head and master of the community for torts committed by his wife within the meaning and contemplation of the provisions of article 2986 of the Revised Civil Code, it would have to be shown affirmatively that she was expressly or impliedly authorized to and was, at the time of the commission of the act, actually attending to the affairs or business of the community" and the court held that the husband and the community property were not liable in damages for an automobile accident which occurred at a time when the wife was using it for her own convenience and pleasure. In the recent case of Brantley v. Clarkson, 217 La. 425, 46 So. (2d) 614, 617, the Louisiana Supreme Court changed the rule laid down in Adams v. Golson, supra, and said: "We are unable to make the distinction between the purpose of the mission of the wife as was made in Adams v. Golson as long as she is using the automobile belonging to the community with the express or implied consent of the husband. The wife is entitled to her own recreation, enjoyment and pleasures as well as the husband and the community owes her those things in the same manner as it owes her the food or the clothes she requires. If the husband, in using a car belonging to the community, commits a tort while on an errand in which he is to indulge in his own pleasures and recreation and thereby becomes liable, there is no reason which suggests itself why the same community, out of which the liability may have to be paid, should not likewise be liable for a tort committed by the wife under the same circumstances." Now it should be observed that this decision of the Supreme Court of Louisiana is based solely upon the relation be-

tween husband and wife under the community property law of that state and is not based upon the "family purpose doctrine" in the use of an automobile. In fact that doctrine is not even mentioned in the Brantley decision. The same situation prevailed in the case of Selaster v. Simmons, 39 Ariz. 432, 7 P. (2d) 258, 260, where it was said: "We think the liability of the husband results from the fact that the automobile was community property and being operated by a member of the community for the benefit of the community at the time the injury was inflicted. When these essentials concur, it follows, as a matter of law, that the driver is the agent of the community." In the case of King v. Williams, 188 Wash. 350, 62 P. (2d) 710, it was said: "Respondent E. C. Williams took dinner on the evening in question with friends, and, on leaving in his automobile, accidentally met two employees of his business firm. They decided to go to a dance, and, on the way, his negligent driving caused the collision out of which the actions arose. Mrs. Williams was not with her husband at the time of the collision. The sole question in the case is whether the community, consisting of Mr. and Mrs. Williams, is liable for his negligence in driving the automobile. There was nothing unusual in his social engagment at the time of the accident with respect to community liability. Normal, legitimate recreational activities on the part of either spouse are not only not harmful, but they promote and advance the general welfare of the community, and the use of the community car for that purpose by one spouse, even if the other one is not present, is using it for the good of the marital community. Birch v. Abercrombie, 74 Wash. 486, 133 P. 1020, 50 L. R. A., N. S. 59; Wicklund v. Allraum, 122 Wash. 546, 211 P. 760; Lloyd v. Mowery, 158 Wash. 341, 290 P. 710." This case was cited with approval and followed in the recent case of Moffitt v. Krueger, 11 Wash. (2d) 658, 120 P. (2d) 512.

Appellant cites and relies on a few cases from other jurisdictions which hold that a statute providing that the

owner of a motor vehicle shall be liable for injuries resulting from any negligent operation thereof by any person legally using it with his permission has no extraterritorial effect, but we are not here confronted or concerned with such a statute. The liability here imposed by the chancellor was not pursuant to such a statute of Louisiana but was against community property, the status of which is fixed and determined by the law of the state where Mr. and Mrs. Vining had their domicile. That status does not change merely because the automobile was on a temporary mission to Mississippi, but was fixed so long as Mr. and Mrs. Vining remained citizens of Louisiana. In this connection we quote from the case of United States Fidelity & Guaranty Co. v. Moore, 9 La. App. 429, 119 So. 886, which says:

" 'Every marriage contracted in this State, superinduces of right partnership or community of acquêts or gains, if there be no stipulation to the contrary.' C.C. art. 2399.

"And 'this partnership or community consists of the profits of all the effects of which the husband has the adminstration and enjoyment.' C.C. art. 2402.

"All property of whatever kind, whether standing in the name of the husband, or that of his wife, or in their joint names, is presumed to belong to the community. This community is presumed to exist until the contrary is shown. Van Wickle v. Violet, 30 La. Ann. 1106.

" 'When a married woman, not separate in property, is engaged in trade, she is presumed, in the absence of proof to the contrary, to trade on the funds of the community and the assets in her hands are those of the community.' Manning v. Burke, 107 La. 456, 31 So. 862; Prendergast v. Cassidy, 8 La. Ann. 96.

"The husband is head and master of the community and administers its effects. C.C. art. 2404.

"The truck which damaged the automobile in this

case belonged to the community and was operated by an employee of defendant as manager of the business. The damage done is a liability of the community and must be acquitted out of the community assets. C.C. art. 2403.

"An action to collect a community debt is properly brought against the husband.

"If there was no community between the defendant and his wife, or if this was not a community debt, the burden was upon the defendant to affirmatively establish that fact. Manning v. Burke, supra. The defendant made no effort to establish these facts, if true."

The status of the automobile here in question having been fixed by the law of Louisiana as community property, and there being no serious dispute in the evidence as to that fact, we conclude that the status did not change when Mrs. Vining crossed the state line on a temporary mission and that consequently the chancellor was correct in his decree to that effect; this case should not be confused with those which hold that the family purpose doctrine established by statute in some states has no extraterritorial effect.

About nine months before the trial of this case the parties entered into an agreement, which was embodied in a decree of the chancellor, to the effect that the seized automobile be sold by the chancery clerk, who was for that purpose appointed a special commissioner, and that he retain the proceeds of such sale "to await the further orders of this court as to the disposition of said funds." By this decree the proceeds of sale took the place of the seized automobile. In the final decree the chancellor directed that the proceeds of sale be applied to the payment of the recovery awarded to appellee, and appellants contend that this was error. Under our statutes on attachment in chancery against nonresidents this is an action in rem insofar as the automobile is concerned. Section 2729 et seq., Code of 1942. Because appellants

were nonresidents the seizure of their community automobile gave appellee a lien upon it to satisfy his recovery, and there was no error in subjecting the proceeds from the agreed sale of the car to the satisfaction of appellee's recovery. 61 C. J. S., Motor Vehicles, § 563b, p. 666.

It is also contended by appellants that no personal judgment should have been entered against Mr. Vining for the balance due on appellee's award over and above the proceeds from sale of the automobile. We are of the opinion that this contention is correct and the decree will be modified accordingly. We may observe however that this is an empty victory for appellants since Mrs. Vining has given a supersedeas bond covering the entire amount of the decree.

Appellants also contend that the chancellor awarded an excessive amount for damages to appellee's automobile, which amount was fixed by the chancellor at $466. According to the proof in the case the actual amount of the repair bill was $388.85, but appellee, being financially unable to obtain his car from the repair shop by paying this in a lump sum, had to obtain from a finance company the required amount and the additional expense of this was a carrying charge of $78.24. The repair man had the right to retain possession of the car until his bill for materials and labor was satisfied. Appellants cite no authorities nor have we found any precisely in point on the proposition raised; they do cite authorities to the effect that an attorney's fee is not allowable in a case of this kind, but it is readily seen that those authorities are not in point because the expense by way of an attorney's fee is incurred in obtaining a recovery of damages and not in obtaining prompt use of the property after it is repaired. The general rule is that ██ "The reasonable cost of preserving and repairing injured motor vehicles, and amounts necessarily expended in the hire of another vehicle and payment of chauffeur's wages pending such repair may be recovered as damages." 25 C. J. S., Damages, Sec. 48b, p. 530. Under this section it

is stated that an allowance for towage and storage of a damaged automobile, pending repair, is proper. The general rule is further that ▮▮ a party must use reasonable means to reduce his damage and that ''As a general rule, a party is entitled to all legitimate expenses that he may show to have been incurred by him in an honest endeavor to reduce the damages flowing from or following the wrongful act.'' 25 C. J. S., Damages, Sec. 49, p. 531. ▮▮ Loss of use of a motor vehicle or the reasonable rental value thereof is an element of damages which may be recovered. 25 C. J. S., Damages, Sec. 157b(3), p. 809. To the same effect on the principles just stated is 15 Am. Jur., Damages, Secs. 29, 40 and 192. An analogous situation is also discussed in the annotations in 33 A. L. R. pp. 1479-1481. In order to prevent further loss of the use of his automobile and in order to minimize his damages by getting his automobile back in use as soon as possible, appellee incurred this additional expense by way of carrying charges. We can see no good reason why this was not a legitimate expense incurred by him in good faith in an honest endeavor to hold his damages to a minimum.

The decree of the lower court will be modified to the extent that Mr. Vining is relieved of personal liability for appellee's recovery over and above the proceeds from the sale of the Vining automobile applied on the decree, and, as thus modified, the decree will be affirmed.

Affirmed as modified.

**Roberds, Alexander, Holmes** and **Ethridge, JJ.,** concur.