**Carl A. THAYER and Carrie G. Thayer, Appellants (Plaintiffs below),**

v.

**Raymond SMITH, d/b/a Casper Trailer Sales, Appellee (Defendant below).**

**No. 3119.**

Supreme Court of Wyoming.

April 23, 1963.

Robert A. Burgess, of Winter, Burgess & Forrister, Casper, for appellants.

J. F. Mahoney, of Mahoney & Murphy, Casper, for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Upon former appeal to this court, the judgment below was reversed and returned

to the trial court for the sole purpose of having determined the amount in damages the defendant should be required to pay by reason of having wrongfully failed to issue unto plaintiffs a title for a trailer house purchased by plaintiffs from defendant. As said in that opinion, "of course, plaintiffs could not recover for any losses they might have prevented by reasonable effort on their part." Thayer v. Smith, Wyo., 357 P.2d 1115, 1119.

Plaintiffs claim actual damage of $1,661.-57, punitive damages of $5,000, and $500 attorneys' fees. At pre-trial conference, defendant agreed $1,661.57 was the reasonable value of plaintiffs' expenses between the time when defendant should have provided the certificate of title and the time when defendant furnished the same, but defendant disputed such expenses were necessary if plaintiffs had made reasonable effort to minimize the loss.

The difficulty between the litigants arose when plaintiffs gave defendant a check bearing a notation "including sales tax" in payment for a trailer house. Defendant wrote on the check "Sales tax not included," cashed the check and then told plaintiffs they must pay an additional $132 sales tax as required by state law before defendant would give plaintiffs the certificate of title necessary to enable plaintiffs to lawfully move the trailer house over the highways of the State. Plaintiffs refused to pay the $132 and defendant refused to give them the certificate of title. Whereupon, plaintiffs, on July 26, 1958, sought damages for defendant's failure to give them the certificate. Upon trial the court denied plaintiff any recovery, and plaintiffs appealed. This court reversed and remanded for trial on the sole issue of the amount of damages. On June 12, 1960, plaintiffs paid the $132 and defendant gave them the certificate of title. On August 17, 1961, trial was again had to the court which found there was no wilful or wanton conduct or malice on defendant's part; that $100 per month was the reasonable cost for rental of an adequate facility for plaintiffs' use during the period

defendant failed to deliver plaintiffs the title certificate, but that plaintiffs by reasonable effort could have reduced that period to three months; that $100 was a reasonable allowance to cover plaintiffs' moving expenses; and that plaintiffs should be reimbursed the $132 paid defendant under protest, with interest at 7 per cent from June 12, 1960.

Thereupon, the court gave plaintiffs judgment for the total sum of $532 with interest on $132 at 7 per cent from June 12, 1960, and costs. Plaintiffs again appeal, claiming the court used an improper measure of damages; erred in finding no wilful or wanton conduct or malice on the part of defendant; and that the judgment was contrary to law and the evidence. However, appellants by their brief seem to have abandoned their contention respecting the court's finding of no wilful or wanton misconduct or malice and only argue: (1) Plaintiffs' failure to tender sales tax was improperly considered in assessing damages; (2) plaintiffs are entitled to damages from date they possessed trailer house; (3) the court erred in not granting their entire compensatory damages claim; (4) defendant failed its burden to prove plaintiffs could have mitigated damages; and (5) the mitigation required by court was unreasonable and oppressive.

■ Aside from quoting remarks made by the court, appellants present no argument in furtherance of their first contention, saying only, "Ordinarily, a tender is required to prevent a party from being in default in a contract and has nothing to do with the assessment of damages in a suit for breach of contract," and citing McHale v. Goshen Ditch Co., 49 Wyo. 100, 110, 52 P.2d 678, 681. A study of that case reveals nothing pertaining to the instant case unless it be the comment, "Parties ought not to be permitted in such case to rush headlong into a lawsuit merely because the other party is in default. They should come into court as nearly free from blame as the circumstances permit. Their conduct may solve or minimize the strife." This does not give appel-

lant much comfort, but its wisdom is reflected by the general rule set forth in 25 C.J.S. Damages § 33, p. 499, "there can be no recovery for losses which might have been prevented by reasonable efforts on the part of the person injured," and the further statement at page 502, "The efforts which the law requires of a person injured by a tort or a breach of contract to avoid what damages he can include the making of reasonable expenditures to such end." William Goldman Theatres v. Loew's, D.C.Pa., 69 F.Supp. 103, review denied 3 Cir., 163 F.2d 241, affirmed 3 Cir., 164 F.2d 1021, certiorari denied 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742; Vining v. Smith, 213 Miss. 850, 58 So.2d 34. Although lack of funds may excuse efforts to lessen the injury, Valencia v. Shell Oil Co., 23 Cal.2d 840, 147 P.2d 558, a person is not required to make extraordinary expenditures requiring a disproportionate outlay in endeavoring to guard against the consequences of the wrongdoer's act. Commodity Credit Corporation v. Rosenberg Bros. & Co., 9 Cir., 243 F.2d 504, certiorari denied 355 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 48; Fischer v. Hendler, 49 Cal.App.2d 319, 121 P.2d 792; Kleinclaus v. Marin Realty Co., 94 Cal.App.2d 733, 211 P.2d 582.

It is also well to remember that the trial court has considerable discretion as to matters to be considered in mitigation of damages, and where the offended party has succeeded in reducing the damages suffered, his claim must be reduced accordingly. 25 C.J.S. Damages § 96, pp. 643–644.

The nature and extent of the injured person's so-called duty to minimize his losses is simply but well stated in 15 Am.Jur., Damages, § 27, p. 422:

" * * * It is also an elementary principle that a party claiming damages must not be in fault in contributing to them by his own want of proper care; and such care must extend to the protection from further loss after the act complained of. If he fails to use such diligence, his negligence is regarded as contributing to his injury, and, further-

more, such damages as could have been so avoided are not regarded as the natural and probable result of the defendant's acts. * * *"

In McClelland v. Climax Hosiery Mills, 252 N.Y. 347, 169 N.E. 605, plaintiff asked damages for wrongful discharge. Judge Cardozo, C. J., in a concurring opinion in which the majority joined, said, discussing the nature and extent of an injured person's so-called " 'duty' " to lessen damages, 169 N.E. at 609–610:

" * * * What is meant by the supposed duty is merely this: That if he [the injured] unreasonably reject, he will not be heard to say that the loss of wages from then on shall be deemed the jural consequence of the earlier discharge. He has broken the chain of causation, and loss resulting to him thereafter is suffered through his own act. It is not damage that has been caused by the wrongful act of the employer."

This statement, although quoted only in part, was noticed in Griffin v. Oklahoma Natural Gas Corporation, 132 Kan. 843, 297 P. 662, 81 A.L.R. 274, and the court observed, 297 P. 665: "The result of the foregoing is that breach of contract of employment is to be redressed as injuries in other relations are redressed," and the court upheld the rule that although a wrong has been committed it is the duty of the injured to make reasonable effort to prevent an increase or extension of the damage, and a failure to do so will prevent recovery for the continuing injury.

The comment in 81 A.L.R. at 283, points out that if the injured person neglects to do what ordinary and reasonable prudence dictates to lessen the damage, the loss chargeable to his neglect will not be deemed to flow directly and naturally from the wrongful act of another but will be regarded as remote. "It is considered that the will of the plaintiff intervenes at the time the cause of action accrues, and that the loss resulting to him thereafter is suffered through his own act."

■ 15 Am.Jur., Damages, § 29, p. 425, agrees that the efforts required of the injured party to prevent or lessen the damages include reasonable expenditures of money which may be recovered as part of the damages. The whole matter is tersely summed up in Bader v. Mills & Baker Co., 28 Wyo. 191, 199, 201 P. 1012, 1015, saying, "The test is, What would an ordinarily prudent man do under like circumstances?"

■ In this case, the amount required to minimize and avert further loss to plaintiffs was small in relation to the size of plaintiffs' claimed compensatory damages, and the question of plaintiffs' ability to pay that sum is rendered moot by the fact that plaintiffs did pay the sales tax.

■ Thus, the important points to be decided are whether the court correctly fixed the date plaintiffs' damages commenced, the date that period would have ended if plaintiffs had acted properly, and the monthly reasonable rental value of substantially suitable quarters during the period thus ascertained.

The court fixed the commencement of the damage period as June 28, 1958, because that was the date upon which plaintiffs first notified defendant they were missing the use of the trailer house as a result of their inability to move it without a certificate of title.

The court first fixed the termination date as October 28, 1958, because Thayer's employment did not end until October 5, 1958, on the theory trailers were rented on a monthly basis. This would have allowed recovery for four months' rental. However, the court changed the termination date to September 28, saying it was satisfied Thayer had no intention of moving his family about on the job unless it would have been during the non-school months of summer.

In consequence, the court arrived at its judgment by assessing damages of $300 for rent, $100 for moving expenses, and the $132 needed to remburse plaintiffs for the sales taxes which they paid under protest, a total judgment of $532 plus interest on $132, and costs.

There was clear evidence to support the court's conclusion that $100 per month rental was sufficient to provide plaintiffs with an acceptable substitute habitation at or near Thayer's place of work. There was in the record sufficient evidence to justify the conclusion that the need to rent a trailer house near the place of employment ceased with the beginning of the school year which commenced in September rather than on October 5, the date his seasonal employment away from home ended. We also agree with the court's reasoning that such rentals are usually on a monthly basis.

What has been said sufficiently disposes of this appeal. The judgment of the lower court is therefore affirmed.

Affirmed.