ELI T. ELY ET AL. *vs.* JOHN CAVANAUGH.

First Judicial District, Hartford, January Term, 1910.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Proof of the execution of a lost instrument ought naturally to precede the admission of oral evidence of its contents; although a reversal in the order of proof can rarely be harmful.

An extension of time in which to remove personal property from land is a mere license, in the creation of which no formality is necessary.

Such a licensee acquires a privilege which, by virtue of his ownership of the personal property, is coupled with an interest, and one which cannot be terminated without affording him a reasonable opportunity to remove his chattels.

One who buys land with full notice that another is in possession of and claims to own personal property thereon, is thereby put upon inquiry and chargeable with a knowledge of the rights of such claimant.

Ordinarily a license is a mere personal privilege and not assignable; but

when coupled with an interest in chattels, it may pass under a sale or assignment of such interest.

Argued January 4th—decided January 18th, 1910.

ACTION to recover an alleged balance for wood, lumber and coal sold to the defendant, brought to and tried by the Court of Common Pleas in Litchfield County, *Welch, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Frank B. Munn,* for appellant (defendant).

*Leslie W. Newberry,* for the appellees (plaintiffs).

RORABACK, J. On April 3d, 1903, the plaintiffs purchased from one Mrs. Mary Seymour and received from her a deed of a wood-lot situated in the town of Portland. On October 22d, 1903, the plaintiffs reconveyed to Mrs. Seymour this lot by a quitclaim deed, which contained the following clause: "It is agreed and understood that the said Ely Brothers have the privilege to cut and remove timber on aforesaid premises within two years from date, and at the expiration of said two years, Mary Seymour to have absolute control and possession of the premises together with what timber may be left standing or cut."

Within the period of two years mentioned in the deed, the wood, lumber and charcoal involved in this controversy had been cut, manufactured and stored upon the lot in question.

About thirty days before the expiration of the two-year period Mrs. Seymour, the owner of the land, executed and delivered to the plaintiffs a writing in substance as follows: Know all men by these presents that I, Mary Seymour, of the town of Hartford, Conn., do hereby extend the rights of Ely Brothers to remove the wood, lumber, and charcoal from the Wetherell lot in the town of Portland for three years, or until November 1, 1908. (Signed) Mary Seymour.

No consideration was paid for the extension of the rights of said Ely Brothers, nor was this writing ever placed on the land records of the town of Portland where the land was located.

Mrs. Seymour died in January, 1906, and by will devised the wood-lot in question to her sons, who afterward conveyed it to Charlotte M. Seymour, the wife of one of them.

The plaintiffs were in the actual, exclusive and undisputed possession of this wood, lumber and charcoal until about June 5th, 1907, when they sold and delivered it to the defendant for the sum of $300, of which $50 only has been paid. August 6th, 1907, the defendant discovered that the land records of the town of Portland did not show that the plaintiffs' time for removal had been extended. On August 10th, 1907, the defendant made a bargain with Mrs. Charlotte M. Seymour to purchase the lot upon which the personal property in question was located, and made a payment of $5 thereon. No one ever questioned the defendant's right to remove any of said materials from the Seymour lot.

The defendant's claim, that there was no evidence before the court that Mrs. Seymour ever executed or delivered to the plaintiffs the writing extending the time in which they might remove the property in contention, is not supported by the record. The writing relating to the extension had been lost. The plaintiffs' own testimony in relation to this document was conflicting, yet it is apparent that any judge hearing this evidence, weighing the testimony, and passing on the credibility of the witnesses, might reasonably have reached the conclusion complained of.

The evidence of the witness Ely as to the contents of the missing paper might well have been postponed until the testimony relating to Mrs. Seymour's execution of it had been more fully developed; but, as the fact of execution was subsequently proved, the prior admission of the evidence of the contents of the paper did no harm.

In September, 1905, when Mrs. Seymour extended the time for the removal of this property, it had been severed from the land. This agreement, to allow the plaintiffs three years longer in which to remove it, was a license. It was permission to do a particular act on another's land without possessing any estate therein. The fact that this permission continued for three years was an ordinary element of a license. The permission to occupy for a further period involved the occupation of the land by the plaintiffs so far as necessary to remove their property. Every other right remained in the owner or owners of the land. The plaintiffs were in possession only by permission, without any agreement for compensation, and not by virtue of such an arrangement as would constitute a contract. *Branch* v. *Doane,* 17 Conn. 402, 412; *Prince* v. *Case,* 10 id. 375, 381. Inasmuch as a license gives no estate in the land, no formality is necessary for its creation. *Giles* v. *Simonds,* 15 Gray (Mass.) 441, 442; *Whitmarsh* v. *Walker,* 1 Metc. (Mass.) 313, 316. When the plaintiffs made application for an extension of time in which to remove their property, all of it had been converted into personalty and was susceptible of being removed at once. Acting upon this extension the plaintiffs allowed their property to remain upon the Seymour land. The license became directly connected with the title to these personal chattels, whereby the privilege became one coupled with an interest in them, and the permission to occupy could not be terminated before a reasonable time to remove had been given them. 1 Washburn on Real Prop. (6th Ed.) § 847. It appears that none of the Seymours ever countermanded their permission to the plaintiffs to occupy, or gave them notice that they could no longer rely upon the license. It would have been a breach of good faith to have permitted any one of the Seymour family to have kept the plaintiffs' property, in the absence of any notice that they could no longer occupy the land. *Upson* v. *Holmes,* 51 Conn. 500, 502; *Parsons* v.

*Camp,* 11 id. 525, 528; *Giles* v. *Simonds,* 15 Gray (Mass.) 441, 443; *Fletcher* v. *Livingston,* 153 Mass. 388, 390, 26 N. E. 1001. The defendant purchased the land with full notice that the plaintiffs were in possession of and claimed to own this personal property. This possession and claim of ownership was sufficient to put Cavanaugh upon inquiry, and he is chargeable with all the consequences of a knowledge of the plaintiffs' rights. Ordinarily a license is a personal privilege and is not assignable; but this is not so when the license is coupled with an interest in chattels, in which case the license itself will pass by an assignment of the chattel interest. *Nelson* v. *Nelson,* 6 Gray (Mass.) 385, 386.

There is no error.

In this opinion the other judges concurred.