Argued September 4; reversed September 17; rehearing denied
October 15, 1935

# DEAN *v.* COLT ET AL.

(49 P. (2d) 362)

*C. E. Zollinger,* of Portland (Pendergrass, Roehr &
Zollinger, of Portland, on the brief), for appellants.

*J. P. Kavanaugh* and *R. C. Bradshaw,* both of Port-
land (Kavanaugh & Kavanaugh and Joseph, Haney &
Veatch, all of Portland, on the brief), for respondent.

CAMPBELL, C. J. The following is a sketch of the right of way and property in question:

N.E. KNOTT ST.

On and before March 1, 1911, Archie R. Rice and J. E. Meehan were the owners of Lots 9, 10, 11, 12, Block 53, Irvington, City of Portland, Oregon. Block 53 is bounded on the north by Stanton street, on the east by Northeast 17th Avenue, on the south by Northeast Knott street, and on the west by Northeast 16th Avenue. It was originally platted into 20 lots. Lots No. 1 to 10 face east and were numbered consecutively from

north to south. Lots No. 11 to 20 faced west and were numbered consecutively from south to north. The lots were 50 feet north and south and 100 feet east and west. These owners desired to divide the tract owned by them differently from the original dedication. They accordingly divided the tract consisting of the four lots into three parcels. The easterly parcel contained the east 70 feet of Lots 9 and 10; the central parcel contained the west 30 feet of Lots 9 and 10, and the east 30 feet of Lots 11 and 12. The westerly parcel contained the west 70 feet of Lots 11 and 12. Thus the easterly parcel had a frontage of 70 feet on Northeast Knott street and a depth of 100 feet; the central parcel had a frontage of 60 feet on Northeast Knott street and a depth of 100 feet; and the westerly parcel had a frontage of 70 feet on Northeast Knott street and a depth of 100 feet.

In the early part of the year 1911, the owners constructed a house and garage on the central parcel and soon thereafter constructed a house and garage on the easterly parcel. On March 1, 1911, the central parcel thus improved was sold to Anna V. Colt and C. C. Colt, defendants herein. On or about May 2, 1911, the easterly parcel with improvements was sold to Mabel E. Richardson and Walter E. Richardson.

Shortly thereafter a house and garage were constructed on the westerly parcel and, during the year 1912, was sold to Marshall A. Poppleton and Hattie S. Poppleton. This westerly parcel was purchased by plaintiff and her husband in the year 1923. The garages were uniform in construction and were built on the northerly line of the properties.

Before the original owners sold any of these parcels they constructed a concrete roadway across the three parcels from Northeast 16th Avenue to Northeast 17th

Avenue. This roadway was laid between the garages and the dwellings of sufficient width to accommodate automobile traffic with concrete approaches leading to each end of the several garages. The garages were constructed with doors at each end of sufficient width to permit an automobile to be driven in or out either end to either 16th Avenue or 17th Avenue.

In 1914, the defendants erected an addition to the northerly end of their house which encroached to some slight extent upon this driveway but not enough to prevent automobiles from passing through between this house and garage.

In August, 1923, plaintiff's husband, W. H. Dean, became the record owner of the westerly parcel or the Poppleton tract. Sometime thereafter the title was changed to an estate by the entirety in said W. H. Dean and respondent. Sometime in 1925 Mr. Dean died and plaintiff became the sole owner of said tract.

At the time of purchase by W. H. Dean and plaintiff, the driveway across the property was open and obvious and in daily use as a right of ingress and egress to and from the Colt garage. Mr. and Mrs. Dean desired to improve their property by constructing an addition to their house which would extend across the driveway. They acquired some property lying immediately to the north of the property purchased from the Poppletons on which they wished to construct a new garage and driveway. Mr. Dean consulted Mr. Colt regarding the improvement contemplated. Mr. Colt agreed to permit the requested alteration to be made provided Mr. Dean would construct a new driveway which would as conveniently serve Mr. Colt's garage. This Mr. Dean agreed to do and afterwards carried out. These alterations were made wholly by Mr. Dean at his own expense. He removed concrete

formerly on his property and also on the Colt's property and laid new concrete to make the new driveway in both parcels. The driveway was, and still is, in continuous use by the defendants as a means of access to and exit from their garage.

Shortly before the commencement of this suit, plaintiff began blocking the driveway by leaving her car parked therein. Upon Mr. Colt remonstrating with her for this, she then for the first time asserted complete title and ownership of the driveway and denied Mr. Colt's easement thereover.

On August 7, 1933, plaintiff brought the instant suit to enjoin and restrain the defendants from using said driveway on said property. The circuit court found for plaintiff and defendants appeal.

It is contended by appellants that when Mr. Dean purchased his property in 1923 it was subject to an easement appurtenant to appellants' property acquired in 1911 by implied grant from the original owners of the tract. They also claim an easement by prescription by their use of said roadway from 1911 to the time of bringing the instant suit. If, at the time appellants acquired the property, there was an implied grant of right of way appurtenant thereto, the consideration of the second proposition as to prescriptive use becomes immaterial.

"The general rule is that where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership there arises by implication of law a grant of the right to continue such use. * * *" 9 R. C. L. 755.

"Three things are regarded as essential to create an easement by implication on the severance of the

unity of ownership in an estate: first, a separation of the title; second, that, before the separation takes place, the use, which gives rise to the easement, shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these another essential is sometimes added—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time." 9 R. C. L. 757.

This court, speaking through Mr. Chief Justice MOORE, in *German Savings and Loan Society v. Gordon*, 54 Or. 147 (102 P. 736, 26 L. R. A. (N. S.) 331), said:

"When the quasi dominant tenement is conveyed, without an express reference in the deed to the servitude, the quasi easement is occasionally held to have been impliedly granted, and at other times not to have passed, depending upon the nature and character of the use imposed upon the quasi servient tenement by invoking the presumption that the parties contracted with reference to the conditions of the property at the time of the sale, and that the grantor intended to convey a right to use the quasi easement, and that the grantee reasonably expected to take and hold such right. [Citing texts and cases.] In Phillips v. Phillips, 48 Pa. 178 (86 Am. Dec. 577, 580), in speaking of a quasi easement, which survives a severance of the tenements by a conveyance of the quasi dominant estate, and which servitude passes by implied grant. Mr. Justice Thompson observes: 'It is not to be understood by this doctrine that any temporary convenience adopted by the owner of property is within it. By all the authorities it is confined to cases of servitudes of a permanent nature, notorious or plainly visible, and from the character of which it may be presumed that the owner was desirous of their preservation as servitudes, evidently necessary to the convenient enjoyment of the property to which they belong, and not for the purpose of mere pleasure.'

\*          \*          \*          \*          \*

"A discontinuous quasi easement when evidenced in a similar substantial manner ought to pass by implied grant as an appurtenant to the dominant tenement when the latter is severed by a conveyance thereof. The reason for this deduction is ably stated by the court in Phillips v. Phillips, 48 Pa. 178 (86 Am. Dec. 577, 581), as follows: 'It may be granted that the continuance of drains, water pipes, and millraces may more distinctly indicate their permanent and essential nature than a mere private way; but when the permanency of the way is proved, confessed, or not disputed, this difference vanishes. They stand on the same footing.'

    *      *      *      *      *

"In the case at bar, though the plaintiffs' tenants can pass over its own land across lot 8 to Corbett street, so that the passageway is not an absolute necessity, we are satisfied that the stairs and walk as laid by Mrs. Gray serve as a more convenient way, and believe them to be reasonably necessary to the enjoyment of the property  *  *  *."

■ This court again put its stamp of approval on those principles in the case of *Tucker v. Nuding,* 92 Or. 319 (180 P. 903):

"Moreover, where the owner of an estate imposes on one part an apparent and obvious servitude in favor of another, and at the time of the severance the servitude is in use and is reasonably necessary for the fair enjoyment of the other, such servitude is described as a *quasi* easement and passes with a conveyance of the dominant tenant by implied grant:" (citing many cases).

Counsel cite many other cases, which we have examined, but we think the two cases above cited fairly state the law as it prevails in this state, and are in harmony with the great weight of authority. We apply those principles to the facts in the instant case.

■ The roadway was obvious and substantially constructed before the original owners of the whole tract

sold any of the parcels, and was intended by such owners as an easement, appurtenant to, and should pass by a conveyance as an appurtenant to each parcel.

The evidence is undisputed that at the time Mr. Colt purchased his property from Messrs. Rice and Meehan the property was improved as a unit. Mr. Rice testified that he and his associate, Mr. Meehan, divided the property into three lots, all facing on Knott street. They constructed a house on the easterly lot and one on the central lot. At the same time they constructed the driveway in question, straight through the block. This driveway was of concrete and served the garages constructed upon the parcel afterwards sold to appellants, and upon the parcel afterwards sold to Richardson. Mr. Rice also testified that at the time he sold the property to appellants: "I explained to Mr. Colt that their driveway was put through there for the purpose of all three properties and that they had doors in both ends of the garage so they could go in one side and out the other"; that he made this representation to Mr. Colt before Mr. Colt purchased the property; "I explained to Mr. Colt that if he bought that piece of property he would have the use of the driveway straight through from 16th to 17th. I explained to him that when I sold the other two properties that it would be thoroughly understood with the other properties that they were to have the same use as he did."

Mrs. Mabel E. Richardson, the owner of the easterly parcel adjacent to the Colt property, testified that when Mr. Rice sold her the property he informed her that "It (the driveway) was for the three (the property owners) to use."

Mrs. Hattie S. Whalley (evidently formerly Mrs. Poppleton) testified that the same statement was made to her and her husband at the time they bought the

tract which they afterwards sold to respondent and her husband.

The driveway was so obvious that before Mr. Dean bought the tract he consulted an attorney and was advised that the appellants probably had an easement over the tract.

Shortly after the Deans purchased the property from the Poppletons, they bought the lot adjoining it on the north, built a new garage thereon, and made a change in the driveway. Mr. Colt testified that before Mr. Dean did this he consulted Mr. Colt and explained the nature and extent of the improvements contemplated. To the change in the driveway, Mr. Colt consented, provided that his means of ingress and egress by the use of the driveway as changed should be equally convenient. To make the contemplated improvements, it was necessary to change the line of the driveway on respondent's and appellants' properties which necessitated removing and replacing some of the concrete in that portion of the driveway laid on the appellants' property. The expense of removing and replacing the concrete was borne entirely by Mr. Dean. To this Mr. Colt testified positively and was not contradicted by any other witness.

Mrs. Dean testified in answer to a question, relative to the expense of the above-mentioned improvement, that: "I don't know. I think Mr. Dean said when we told him (Colt) they (Colts) could use it and they (the workmen) were doing the work—he was that type; he was very friendly and agreeable, and I think he just told Mr. Colt that he would put it in for him. The men were working there. I really don't know, but I really think—because he was that type; he was very friendly and agreeable, and I think he told Mr. Colt he would put it in; the men were working there."

The three parcels having been improved in the first instance as a unit, the buildings and shrubbery having been placed thereon, it would now make it very inconvenient for appellants to rearrange their improvements and make an entrance to their garage entirely over the central tract. The driveway in question while "not an absolute necessity" is still "reasonably necessary to the enjoyment of the property".

■ Respondent contends that due to the construction of an addition on the north side of appellants' residence, which overlaps into the driveway, thereby narrowing the driveway between the house and garage, an abandonment was indicated. This construction did not prevent any of the owners from driving their automobiles through between appellants' house and garage. The evidence shows that there was sufficient width remaining to use the driveway for the purpose for which it was originally intended.

Having decided that there was an implied grant of an easement over and across the respondent's property and appurtenant to appellants' property, that it never was abandoned and has been in continuous use from 1911 to the present time, and is reasonably necessary to the enjoyment of the property, it follows that appellants are entitled to the continued use thereof.

The question as to prescriptive use now becomes immaterial.

Appellants having filed a separate answer and defense by way of cross-complaint in which they allege practically the same set of facts as are stated in the statement of the case herein, and have asked that plaintiff be enjoined from interfering with their use of the easement in question, to this relief they are entitled.

The decree of the circuit court will be reversed and one entered here dismissing respondent's suit, and de-

creeing that appellants have an easement of way as it existed at the time of bringing this suit, over and across respondent's property, and the respondent be enjoined from interfering with appellants' use thereof. The appellants will recover their costs and disbursements.

It is so ordered.

ROSSMAN, J., did not participate in this decision.