E. W. PAUL, appellee, v. GARNEY BLAKELY, appellant.

No. 47995.

(Reported in 51 N.W. 2d 405)

FEBRUARY 5, 1952.

Hall & Ewalt, of Indianola, for appellant.

F. R. Curry, of Osceola, for appellee.

THOMPSON, C. J.—On March 3, 1949, the defendant, who was the owner of certain farm lands situated near the city of Osceola, in Clarke County, sold eighty acres of her property to one Ralph H. Allen, by written contract. The total purchase price was $3200, payable in installments. The first payment was $1200 at the time of the signing of the contract, with further installments of $500 each, with interest on unpaid balances, to be paid on March 1 of each of the years 1950, 1951, 1952, and 1954. All payments due up to the time of the bringing of this action, with taxes accrued, had been paid by Allen or by plaintiff, and defendant does not contend otherwise.

The material part of the contract, as far as the present controversy is concerned, is found in these two sentences:

"First party agrees that second party shall have privilege of driving thru the south boundary forty feet of her farm so long as gates are kept locked. Second party is to have first privilege of buying forty feet of said above described driveway at price equal to any other portion of her farm adjacent to this driveway."

It appears that immediately after the execution of the contract above referred to Allen took possession of the eighty acres he had purchased, and through that year kept and fed hogs there. As the contract indicates, the defendant owned other land adjacent to that which she had sold to Allen; and it fairly appears that much the more convenient and practicable means of access to the Allen land was by means of the way across defendant's land described in the contract. There was a public road by which the eighty acres could be reached, but much of it was unsurfaced and generally uncared for, and a considerable part of the year it was impassable or nearly so. The way across defendant's land, on the other hand, was reached at its east entrance by means of U. S. Highway No. 69, a hard-surfaced road.

About February 7, 1951, Allen sold and assigned his contract, by written assignment, to the plaintiff. Although he says that when he first advised defendant, within a few days after his purchase, he had bought Allen's rights and would be crossing her property under the claimed right given in the contract, she said that would be all right, it is undisputed that very shortly she advised him he could not cross her land and denied any obligation to permit him to do so. Plaintiff thereupon brought this action asking specific performance of the agreement for what he claims is an easement, and praying that defendant be restrained from interfering with his alleged right to full enjoyment thereof. Defendant answered, denying that the provisions of the contract above set forth create more than a license, nonassignable and revocable at the will of the licensor; and further alleging that, even though it be held that an easement was created, plaintiff's assignor, Allen, had violated the provisions of the contract by leaving the gates unlocked on numerous occasions and had thereby forfeited all his rights to cross defendant's land, and so had none to convey to plaintiff. The trial court decided the issues in favor

358

of the plaintiff and granted him a decree as prayed; and so we have this appeal.

The first error assigned is that the trial court erroneously held the right to drive across defendant's land to be an easement rather than a mere license; the second is that in any event Allen's conduct in repeatedly leaving the gates unlocked worked a forfeiture of any right he had. We shall discuss these claimed errors in order.

I. It is true that it is often difficult to distinguish between an easement and a license. Easements arise either by written grant, by prescription, or by implication. See Loughman v. Couchman, 242 Iowa 885, 888, 47 N.W.2d 152, 153, 154; McKeon v. Brammer, 238 Iowa 1113, 1119, 29 N.W.2d 518, 522, 174 A. L. R. 1229, 1234. A license may be by parole or it may be in writing. 2 Thompson on Real Property, Perm. Ed., section 710, page 394. There are several tests given by the textbook writers to determine whether a given right or privilege is an easement or a license; but, since they turn generally upon the result or effect of the grant, which in turn rests upon whether the grant is an easement or a license, the seeker for light finds himself traveling in a circle which brings him at the end to the very spot from which he started. Thus, it is said that an easement is assignable, but not revocable, while the opposite of each is true of a license; and that an easement implies an interest in land, while a license does not. None of these considerations is of much aid in determining whether the writing in question here is an easement or a license.

It is further said that the intent of the parties is to be taken as the real determining factor. 17 Am. Jur., Easements, section 5, page 927; Presbyterian Church of Osceola v. Harken, 177 Iowa 195, 203, 158 N.W. 692; Sherwood v. Greater Mammoth Vein Coal Co., 193 Iowa 365, 374, 185 N.W. 279. We apply this test to the situation shown by the record here.

It is to be noted that the grant here was written, and, since it was a part of the contract, was made for a consideration. These are ordinarily attributes connected with easements rather than licenses, although not necessarily so. But we think that the situation was such that an inference of easement is the proper one to be drawn. Allen or his grantees would need the roadway, or

right to drive, which here amounts to the same thing, across defendant's land for a long time to come. There is no indication that the public road will be, in the foreseeable future, repaired or made any more serviceable. It seems most unlikely that Allen was bargaining for a privilege which, if defendant's position is correct, might be taken away from him the next day. Under such circumstances he could make no plans for use of the way with any assurance that they would be carried out. True, the grant could have been more clearly expressed, but here the parties were equally at fault. Instead of employing skilled counsel to prepare their contract they entrusted it to the real estate agent who brokered the sale. It may well be that their economy at this point has resulted in expensive litigation which could have been avoided by a more definite expression of their real intent.

It is defendant's contention that the fact that Allen was given the right to purchase the roadway if defendant should sell the remainder of the tract of which it is a part shows the intent of the parties to create a license rather than an easement. The argument is that it was understood that a sale by defendant would revoke the license, and the purchase clause was included so Allen could protect himself thereby. We do not so consider it. It may well have been an additional right given to Allen, or his successors in interest. For many reasons the right to purchase would be valuable even though an easement to cross the same strip already existed. It might be desired to improve the land in various ways; or it might be of value to avoid the constant necessity for opening, closing and locking gates.

Nor do we think that it would aid defendant's cause if we should hold that the grant is a license rather than an easement. Necessarily, since there is a consideration paid for it, it could not be revoked, even under defendant's theory, unless defendant sold her land. This she has not done. Nor can it be urged that such a license could not be assigned. Ordinarily nonassignability is an attribute of a license, but it is not always so. An executed license, for which a consideration has been paid or money has been expended in reliance thereon, may be assigned and is not revocable for that reason. 53 C. J. S., Licenses, section 86, page 813; Keystone Copper Mining Co. v. Miller, 63 Ariz. 544, 164 P.2d 603; Ely v. Cavanaugh, 82 Conn. 681, 74 A. 1122.

Since we have indicated our holding that the grant in question here is an easement rather than a license, we shall consider questions of the assignability or revocation of licenses no further, except to say that the trend of modern judicial thought is definitely toward the holding that there is often little if any difference in effect between an easement and a written license given for a consideration. Some cases in fact hold that the latter often, if not always, becomes an easement. Shaw v. Proffitt, 57 Or. 192, 109 P. 584, 110 P. 1092, Ann. Cas. 1913A 63. In Robbins v. Archer, 147 Iowa 743, 745, 126 N.W. 936, we said:

"That plaintiff was given the right to use the road in question, and that such right was based upon a good and adequate consideration, is practically conceded, and it makes little difference in so far as this controversy is concerned whether it be called a license or an easement. In either event it was not forfeitable at pleasure, but only for good cause."

■■ II. We also find no merit in defendant's second assigned error. It relies for its factual basis upon the claim, supported by testimony of several witnesses, that during the time Allen occupied the tract which he had purchased from defendant, and later sold to plaintiff, the east gate giving entrance from the paved highway was often left open, and of course unlocked at all times, so defendant thinks this worked a forfeiture of that part of the contract. Plaintiff contends that there is no evidence that Allen or his employees or agents left the gates unlocked, but that the record shows, at the most, the gates were found open, without any proof of whose was the responsibility. We refrain from determining this factual question. The governing rule is thus expressed in 2 Thompson on Real Property, section 698, page 377:

"Upon the principle that the law does not favor forfeitures, courts have generally held that to justify the forfeiture of an easement because of misuse thereof or a violation of the conditions of its enjoyment, the acts of the dominant owner must be wilful and substantial, and not merely technical."

This rule was followed in Bina v. Bina, 213 Iowa 432, 435, 436, 239 N.W. 68, 78 A. L. R. 1216. It was contended there that

the dominant party had forfeited his right by leaving gates open along the roadway in dispute. We held that although the gates were at times left open, and this was in violation of the mandate in the deed requiring that they be kept closed at all times, there was no showing that the conduct of the party claiming the right to use the way was malicious or for the purpose of denying the other party's rights in the premises. No forfeiture should be declared in this class of cases unless it clearly appears that the acts of the one whose rights are claimed to be thus lost were deliberate and wilful and done for the purpose of injury. No such showing appears here; indeed, unless it be inferred from the fact that Allen or his agents or employees were using the way, there is no evidence that they were the persons who left the gates unlocked. There is evidence that others also used the road.

We agree with the conclusions of the trial court.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.