**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**SPOOL STOCKYARDS COMPANY, Defendant.**

Civ. No. 2829.

United States District Court
N. D. Texas,
Amarillo Division.

June 12, 1963.

Thompson, Walker, Smith & Shannon, Fort Worth, Tex., and Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Tex., for plaintiff.

Folley, Snodgrass & Calhoun, Amarillo, Tex., for defendant.

ESTES, Chief Judge.

This is a suit for title to certain tracts of land in Potter County occupied by plaintiff's tracks and formerly used as a portion of its main line, and for an injunction requiring defendant to remove a barrier erected by it and restraining further interference with plaintiff's use and possession. By stipulations, disclaimers and admissions the controversy is now only with respect to the right of way covering a 200 foot strip across Section 124, Block 2, AB&M Survey. Until 1958 this constituted part of the main line of plaintiff (hereinafter referred to as "Rock Island") and its predecessors Chicago, Rock Island and Gulf RR Co. and Choctaw, Oklahoma & Texas RR Co. (hereinafter referred to as "Choctaw") extending in an easterly and westerly direction through Amarillo and connecting with Memphis, Tenn. to the east and Tucumcari, New Mexico to the west. Defendant (hereinafter referred to as "Spool") denies plaintiff's ownership.

In August, 1958, due to an enlargement of the Amarillo Air Force Base, said main line was relocated further south, but still over and through Section 124, under a new easement covering the new right of way. Since such relocation the strip in question, though still occupied by plaintiff's track, which has not been abandoned, constitutes a part of a dead end spur branching off of the present main line at or near the west line of Section 124 and ending at the Air Base

Boundary. According to the deposition of its district general manager, plaintiff has been using this spur for the movement of materials in connection with Air Base construction, and desires to use it generally "for the purpose of leads into the industrial areas or upon which cars would be moved or be permitted to remain for the purpose of loading or unloading or for storage purposes." Defendant contends that plaintiff has no right to use it for such purposes, and that its easement terminated when it ceased to be a part of the main line. No present right of condemnation is involved, the question being whether the right of way easement acquired by Choctaw in 1903 terminated with the relocation of the main line, or, at all events, whether its new use as an industrial spur authorized defendant to erect a barrier across it.

Choctaw's easement was vested in it by the 1903 judgment of the District Court of Potter County in a suit brought by Kerr, the then owner of Section 124, against Choctaw in trespass to try title and for an injunction, in which Choctaw by cross bill sought condemnation, and was awarded an easement. The case here presented involves the construction and effect to be given this judgment.

The 1903 case, on the issue of damages (compensation) was submitted to a jury, but the awarding of the easement was in effect an instructed verdict, pursuant to which the jury found "for the defendant, the right of way across plaintiff's land, as described in defendant's answer and assess the plaintiff's damage at $640.00." The judgment was

> "that plaintiff take nothing by reason of his suit of trespass to try title, that the defendant go hence as to the suit of trespass to try title and that the defendant have and recover of plaintiff on its plea of reconvention the right of way across the land in controversy as set up and described in defendant's answer and here described as follows (describing the 200 foot strip across Sec. 124)."

Kerr's trespass to try title suit sought judgment for the whole of Section 124, to which Choctaw pleaded not guilty. However, the general "take nothing" judgment is controlled and limited by the disclaimers in Choctaw's answer so as to take it out from under the Permian case (Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152). Indeed it is not contended here that the judgment vested anything in Choctaw except the right of way expressly awarded, and in my view it is not to be taken as vesting in Choctaw anything disclaimed by it in its answer. See Hughey v. Atlantic Oil Prod. Company, 130 Tex. 255, 109 S.W.2d 1041. For this reason, as well as the reference in the judgment to the right of way "as set up and described in defendant's answer," it is necessary to examine that pleading.

Choctaw plead that it was incorporated for the purpose of constructing and operating a line of railway from Texola, on the line between Oklahoma and Texas, to Amarillo and thence westerly to Tucumcari; that it had completed its line as far as Yarnall, in Carson County, and was running its trains on regular schedule to that point on its own line and from there to Amarillo over the tracks of other companies; that it had staked out and was constructing its own line from Yarnall to Amarillo and Tucumcari, and that it would be necessary for it to appropriate and use for right of way purposes the 200 foot wide strip across Section 124; "that said land across plaintiff's said section should be condemned for its use as right of way purposes, and that it be granted the use of such land for such purposes; and

> defendant here disclaims as to all of said land in said petition described save and except so much thereof as is included within its right of way as above described, and disclaims as to this portion, save and except as to an easement therein and a user thereof as long as it maintains its said line of railway over and through said section of land."

The words "its said line of railway," construed in the light of the entire pleading, obviously referred to the line of railway extending from Texola to Tucumcari, which was a "main line" (Rock Island expressly pleads that the strip in question "may be further identified as having constituted a portion of plaintiff's main line prior to the relocation.") It is my view that the easement sought to be condemned by Choctaw was a right of way to continue "so long as it maintains its said line of railway over and through said section of land"; that the judgment awarding the easement "as set up and described in defendant's answer" had the effect of awarding it the easement it sought, viz., an easement for right of way purposes, to continue so long as it maintained its main line across Sec. 124. Although the line has been relocated and is no longer maintained along the original right of way, it is maintained "over and through said section of land", although at a different location, and it is my view that the easement has not terminated by reason of the time limitation.

We come then to the question whether or not the facts that the track along the old right of way is not, and cannot be, now used as a part of the main line and that Rock Island has been using it, and intends to continue to use it, as an industrial spur, so divested the railroad of its right to possession as to justify Spool in fencing it off.

The parties agree that land condemned for a certain use cannot be appropriated to another use to the detriment of the owner, at least without additional compensation. Rock Island's position is that by the 1903 judgment it acquired a right of way for the construction of a railroad track and the operation of trains thereon; that the use as an industrial spur will still be as a railroad track and for the passage of trains, and so will not amount to any change in the character of use.

Spool's position is that the right of way acquired in the 1903 condemnation was for use as a part of the main line

of railroad; that its use as an industrial spur is a different character of use; that the easement awarded was not for an industrial spur, and could not have been because the law in 1903 did not authorize condemnation by a railroad of a right of way for such a spur. For the latter contention it relies primarily on the cases of Kyle v. T. & N. O. Ry. Co., 3 Willson Civ. Case. #436, and Missouri K. & T. Ry. Co. v. Anderson, 36 Tex.Civ. App. 121, 81 S.W. 781.

In the Kyle case (1889) a railroad, authorized by its charter (as was Choctaw) to build and operate a line of railroad, sought to condemn a right of way for a spur running from its main line to a saw mill and a shingle mill operated by private concerns, and a wharf operated by the railroad and serving private vessels operated for private profit. The law at that time (and in 1903) authorized a railroad to acquire by condemnation property required for specified purposes, including "any other lawful purpose connected with or necessary to the building, operating or running its road" (Art. 4180, Rev.Stat. 1879, Art. 4445, Rev.Stat. 1895, Art. 6504, Rev.Stat. 1911, Vernon's Ann.Civ. St. art. 6336). The Court of Civil Appeals held that the proposed spur, to serve private interests, was not a public use, nor necessary for the operation of the main line to construct and operate which the railroad was chartered, and hence condemnation was not authorized.

The Kyle case recognizes that "the question whether or not a use is public, so that private property may be taken for its promotion, is prima facie for the legislature." The application to the present case of the holding that the spur there sought to be condemned was a private and not a public use is materially weakened by the fact that after that case, and before 1903, the legislature recognized the public character of railroads to manufacturing plants etc. by authorizing the formation, with eminent domain powers, of corporations to construct and operate such lines (Acts 1897, p. 192, Art. 6550 Rev.Stat. 1925, Vernon's Ann.Civ.St. art. 6550). That this was

not an unconstitutional statute is inferentially held in Texas & N. O. R. Co. v. Schoenfeld, 136 Tex. 173, 146 S.W.2d 724, hereafter to be mentioned.

The Anderson case (writ of error refused) was a suit for damages resulting from the railroad's construction of yards, a coal chute, water tank, switches etc. near, and a switch track upon, plaintiff's land, involving the construction of a right of way deed by a former owner of both plaintiff's land and the adjacent land. The deed was held to have conveyed only a "right of way," which, by anology to the condemnation statutes, meant a right to locate thereon "its line of road, together with such side tracks as might be necessary to the operation of the same, but not to use the right of way for yard purposes (even though, it is implied, such use involved only the passage of locomotives and cars over the track). The opinion observed that "when land is condemned for one purpose it cannot be applied to another purpose without making compensation." The case was concerned with the intention of the parties to a conveyance, and is not strictly in point here, but the dicta, arguendo, re the effect of condemnation of a right of way, only support the proposition that condemnation of a right of way does not authorize its use for other and different purposes imposing an additional burden on the landowner, without additional compensation.

Rock Island relies in part on Texas & N. O. R. Co. v. Schoenfeld, 136 Tex. 173, 146 S.W.2d 724. That case arose after the passage, in 1925, of Art. 6316a, expressly authorizing railroads to construct and operate spur or industrial tracks to reach or serve industries, and to condemn property for rights of way for that purpose. Probably, strictly speaking, the holding that the railroad had the power to condemn the spur track in question relates under the facts of the case to a time after the passage of the 1925 Act, but the opinion is clearly in point here. The Court of Civil Appeals held that a spur track for the purpose of serving lime kilns and rock quarries owned by one individual was a private and not a public use and no right of condemnation existed. The Supreme Court, in an opinion reversing and rendering a judgment against the railroad for damages for taking up its track, expressly disapproved that holding, saying: "That the Railroad Company has the power, under the law, if necessary, to condemn property like that in controversy, is now, we think, clearly established," citing not only Art. 6316a but several older statutes, including Art. 6509 (Acts 1903, p. 93, which became effective before the filing of the 1903 suit) providing that all railroads shall build sidings and spur tracks sufficient to handle the business tendered them, when ordered by the Railroad Commission, and Art. 6550 (the 1897 Act heretofore referred to). Neither the Court of Civil Appeals nor the Supreme Court referred to the Kyle case, but I consider the Supreme Court opinion as a definite repudiation of the doctrine of that case. It is now generally held that an industrial spur, available to the public generally, is a public and not a private use. See Alton R. Co. v. Ill. Commerce Comm., 305 U.S. 548, 59 S.Ct. 340, 83 L.Ed. 344.

■■ Accordingly, I consider the defendant's argument that Choctaw, in 1903, could not have acquired by condemnation an easement to use this right of way for an industrial spur to be untentable. However, that alone is not necessarily decisive of this case. Rock Island's rights depend on what Choctaw did acquire, not on what it could have acquired. Henry v. Columbus Depot Co., 135 Ohio St. 311, 20 N.E.2d 921. It did seek and acquire an easement "as right of way purposes," which has not terminated and has not been abandoned. It was not expressly limited to main line purposes. But even if that was the intention when it was acquired, and even if the use to which its successor, Rock Island, now desires to put it is not a main line use, and even if Spool may be or become entitled to additional compensation (a question not before this court), Spool had no right to oust Rock Island, who was in

possession by virtue of an existing easement, or to fence off the strip so as to prevent its use. Mere non-user does not terminate an easement, absent intent to abandon. Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922, Perry v. City of Gainesville, Tex.Civ.App., 267 S.W.2d 270 (writ ref. nre) and a change in use from that authorized is not a basis for cancellation of the easement, Seastrunk v. Walker, Tex.Civ.App., 156 S.W.2d 996 (writ ref. nre), at least unless the misuser is such that the objective of the use wholly fails, Perry v. City of Gainesville, supra, a situation which does not obtain here, since the use of this strip "as right of way purposes" has not wholly failed.

█ Injunction is a proper remedy to prevent interference with an easement. City of Mission v. Popplewell, 156 Tex. 269, 294 S.W.2d 712.

█ The Court therefore concludes that (1) the easement awarded to Choctaw in 1903 was not limited in time to the period of its use as a part of the main line (2) plaintiff was in possession under an existing easement, and Spool had no right to erect a fence across the strip or to interfere with plaintiff's possession, and plaintiff should have the injunction it seeks.

Plaintiff also prays for title and possession. With respect to the Fourth Tract (i. e. the strip in Section 124) plaintiff's complaint alleges "the ownership interest of plaintiff in said tract being the full title vested in its predecessor under the condemnation laws of the State of Texas." As to said tract in Section 124 the prayer for title and possession should be and is granted only to the extent of the title vested in Choctaw under the 1903 judgment. With respect to the remaining lands (First, Second and Third Tracts) described in plaintiff's complaint, plaintiff should have and is granted judgment, by virtue of defendant's disclaimers and admissions, for title and possession of the interests described in plaintiff's complaint.

There being no testimony or stipulation as to damages, plaintiff's prayer for damages should be denied.

This Memorandum Opinion and the stipulations of the parties on file shall constitute the Findings of Fact and Conclusions of Law herein as authorized by Rule 52, F.R.Civ.P.

Counsel will submit a judgment in accordance with this opinion for entry.