**SPOOL STOCKYARDS COMPANY, Appellant,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellee.**

**No. 20848.**

United States Court of Appeals Fifth Circuit.

Nov. 10, 1965.

A. J. Folley, Amarillo, Tex., Folley, Snodgrass, Calhoun & Kolius, Amarillo, Tex., of counsel, for appellant.

R. A. Wilson, Amarillo, Tex., Joe E. Gracey, Fort Worth, Tex., Thompson, Walker, Smith & Shannon, Fort Worth, Tex., and Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Tex., of counsel, for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, District Judge.

CHRISTENBERRY, District Judge:

This is an appeal from a judgment of the District Court recognizing the validity of appellee's title to an easement on

certain property and enjoining appellant from interfering with or obstructing appellee's use and possession thereof.

The land involved is a 200-foot strip across Section 124, Block 2, Potter County, Texas, as shown on a survey of Adams, Beaty and Moulton. Until 1958 this constituted part of the main line of appellee, Chicago, Rock Island & Pacific Railroad Company (hereinafter called Rock Island) and its predecessors Chicago, Rock Island & Gulf Railroad Company and Choctaw, Oklahoma and Texas Railroad (hereinafter called Choctaw). This line ran generally in an easterly and westerly direction from Memphis, Tennessee, to Tucumcari, New Mexico.

In 1958, the enlargement of the Amarillo Air Force Base necessitated the relocation of the main line of the railroad from its then existing location in Section 124 to a strip to the south, the new line still passing over and through Section 124. After the relocation of the main line, the original 200-foot strip became a spur or industrial track. It serves the Air Base and is intended to be used as a lead to other industrial areas or as a location for loading and unloading cars or for car storage.

Appellant, Spool Stockyards Company, contends here, as it did unsuccessfully in the trial court, that the change in use from main line to spur track effectively cancelled Rock Island's easement on the property. Specifically, Spool argues 1) that the original acquisition of the right-of-way by Choctaw in 1903 was for main line purposes only, and that any other use terminates the user's rights; 2) that Choctaw's charter in 1903 did not authorize the company to construct a spur or industrial track, but only a main line; and 3) that in 1903 the laws of the State of Texas did not authorize a commercial railroad such as Choctaw as distinguished from an industrial railroad to construct and operate spur or industrial tracks or to condemn property for that purpose.

In 1903, Choctaw acquired the right-of-way here at issue by condemnation from the then owner of the land J. B. Kerr. Kerr had instituted suit in trespass to try title against Choctaw, and for damages and injunctive relief. Choctaw, having disclaimed any interest in all property except the easement in question, filed a cross action for condemnation of the right-of-way, and prevailed in judgment. It is undisputed that Choctaw then intended to use the right-of-way for main line purposes and that Choctaw and its successors did until 1958 use the right-of-way solely as a main line.

The issue here boils down to what effect, if any, the change of use from main line to spur track had on Rock Island's right to the continued use of the property.

We turn first to Spool's contention that the judgment of the court in the 1903 condemnation suit did not grant to Choctaw the right to use the property for any other purpose than that of operating its main line. The judgment of condemnation awarded to Choctaw " * * * the right of way across the land of plaintiff in controversy as set up and described in Defendant's answer, and here described as follows: (Here follows a description of the land)." The answer to which the court referred disclaimed as to all property "save and except as to an easement therein and a user thereof *as long as it maintains its line of railway over and through said section of land.*" Appellant argues that engrafted on the judgment is the condition that the easement continue only so long as Choctaw or its successor maintain its "line of railway" over and through Section 124.

Appellee insists that the district court was correct in finding that the terms of the judgment of condemnation granting the easement "as set up and described in the defendant's answer" were intended only to limit the easement to right-of-way uses, so that it could not be used for depots, yards or other legitimate railroad purposes. It further insists that even accepting the construction which appellant gives to the judgment of condemnation, the condition that the line of railroad over and through Section 124 be

maintained has been and is now being complied with since the new main line, though south of the old line, still passes *over* and *through* Section 124.

■ We conclude from a reading of the judgment in its entirety, as Texas law requires in the interpretation of judgments, that the court in rendering it intended to limit the use of the easement to right-of-way purposes, but not to specifying the precise nature of right-of-way use, as contended by appellant.

■ The easement was acquired by Choctaw for the purpose of operating a railroad. The change from main line usage to spur created no greater burden than was contemplated when the right-of-way was acquired in 1903. "The owner of land subject to a public easement has no right to insist that the public use remain precisely the same; and if the original use is changed to another of the same general character and is no more burdensome there is no reversion * * *." 18 American Jurisprudence 750, Eminent Domain, Section 127. It certainly cannot be said that the use of the easement for a spur track was so foreign to the purpose for which it was originally acquired as to cause its forfeiture.

■ There is no question of abandonment, for the parties have stipulated against abandonment, nor has the easement terminated. We find that Choctaw acquired the easement for right-of-way purposes, and that it was not expressly limited to main line purposes. Misuse alone does not constitute a basis for termination of an easement, unless the misuse makes it impossible to effectuate the purposes for which the easement was created. Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922; Perry v. Gainsville, Tex.Civ.App., 267 S.W.2d 270, rehearing denied; 21 Tex.Jur. 2nd, 178; and a change in use from that authorized is not a basis for cancellation of the easement. Seastrunk v. Walker, Tex.Civ. App., 156 S.W.2d 996. We agree with the findings of the learned trial judge that the appellee's use of the right-of-way for spur purposes did not go beyond the rights granted to Choctaw.

■ Considering next appellant's contention that at the time of the 1903 acquisition Choctaw's charter did not authorize it to operate spur tracks, and that hence any use of the property for such purpose is illegal and ultra vires, we find that the present posture of Texas law precludes appellant from raising this question. The Business Corporation Act, Article 2.04, provides that except in certain enumerated circumstances, none of which is here pertinent, the "lack of capacity of a corporation shall never be made the basis of any claim or defense at law or in equity."

■■ However, even if the law were otherwise, we think that appellant's contention must fail. While it is true that the appellee holds its easement by virtue of the judgment of condemnation, we do not agree that the legality of its asserted right-of-way must be tested by its corporate capacity as of the time the judgment was rendered. On the contrary, we are of the view that the capacity of a corporation to act is important in a legal and justiciable sense, only when it does act, and appellee's capacity to operate a spur track became important only when it began doing so in 1958. The record contains no complaint or evidence of corporate incapacity at this latter time.

Perhaps the most appealing contention made by the appellant is the last, that at the time of the condemnation in 1903 the laws of the State of Texas did not authorize a commercial railroad such as Choctaw as distinguished from an industrial railroad to construct and operate spur or industrial tracks or to condemn property for that purpose.

In support of this contention appellant relies primarily on the cases of Kyle v. T. & N. O. Ry. Co, 3 Willson Civ.Cases Ct. App. #436 (1889), and M. K. & T. Ry. Co. of Texas v. Anderson, 36 Tex.Civ. App. 121, 81 S.W. 781. In the Kyle Case, supra, the question before the court was whether a railroad could condemn a right-of-way for a spur track running

from its main line to private businesses. The determination of such right of condemnation turned upon the classification of the type of use, private or public, to which the spur track was put. The Kyle Case is not determinative of the issues here presented. It is not disputed that a railroad had no right to construct spur tracks in 1889. But as pointed out by the trial court the holding in the Kyle Case was materially weakened by the fact that after that case, and before 1903, the Legislature recognized the public character of railroads to manufacturing plants, etc., by authorizing the formation, with eminent domain powers, of corporations to construct and operate such lines, Art. 6550 Rev.Stat. (1925) which originated as an Act of 1897.

In the Anderson Case, supra, which was a suit for damages resulting from the railroad's construction of a coal chute, water tank, yard and side tracks on plaintiff's land, the issue before the court was the construction of a right-of-way deed. The deed was construed to convey to the railroad only a "right-of-way", which meant its line of road, and such side tracks as might be necessary to the operation of same. The Court held that condemnation was for right-of-way purposes, and that such purposes did not include the building of coal chutes, water tanks and yards.

We find ourselves in agreement with the District Court that appellant's reliance on these cases is misplaced.

In the case of Texas and New Orleans R. Co. v. Schoenfeld, 136 Tex. 173, 146 S.W.2d 724, decided in 1941, on which appellee relies in part, the Supreme Court of Texas in discussing a spur track intended to serve or serving lime kilns and rock quarries, said: "That the Railroad Company has the power, under the law, if necessary, to condemn property like that in controversy, is now, we think, clearly established.", citing Article 6316a and other statutes, including Article 6509, Acts 1903 p. 93. These Acts became effective before the filing of the suit against Choctaw in 1903.

It is clear from the Schoenfeld Case, supra, and the pertinent statutes [1] that Choctaw could have condemned the land in question for spur track purposes.

The judgment of the District Court is right. It is, accordingly, affirmed.

1.   Articles 6316a, 6319, 6336, 6351, 6509 and 6550, Revised Civil Statutes of Texas.