**Margaret CORBETT, Appellant (Defendant below),**

v.

**Charles WHITNEY, Appellee (Plaintiff below).**

**No. 5155.**

Supreme Court of Wyoming.

Dec. 13, 1979.

Walter Scott, Laramie, and Patricia Monahan, senior law student, for appellant.

Craig E. Kirkwood, Laramie, for appellee.

Before RAPER, C. J., and McCLINTOCK*, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This tale of neighborly discord involves the issue of whether the defendant-appel-

---

* McCLINTOCK, Justice, sat at oral argument, but recused himself thereafter. He did not participate in the consideration and determination of this case.

lant may fence off her half of a common driveway leading into a common double garage. We will affirm the order of the district court that the defendant remove her fence. We will hold that an implied easement exists entitling the plaintiff to use the original driveway.

## THE FACTS

The controversy reaches fruition in this court under the following uncontested facts:

The driveway and garage straddle the boundary between the two lots. The plaintiff's residence was built in 1922 without a driveway or garage, and in 1928 the same grantor built the defendant's residence, at which time he also built the common driveway and garage. On September 28, 1928, the common grantor split ownership of the two lots by selling the lot currently owned by the plaintiff, and, according to the defendant's pretrial conference memorandum, this was "probably after construction of the common driveway." The common grantor sold defendant's lot in 1936.

From 1928 until 1978 (when the defendant built a fence through the driveway, approximately on the property line), the plaintiff and defendant and their predecessors in interest used the common driveway, and such use was continuous and without interruption during that period. It is to be observed that the deeds to the lots involved do not specifically mention the easement. The record shows that the shared-driveway situation is apparent from a visual inspection of the two properties.

Defendant alleges that her action in erecting the fence through the driveway was necessary to insure her use of her half of the garage since plaintiff's tenants have on occasion blocked access to the garage by parking in the driveway for as long as three or four days. Plaintiff's house is so close to the property line that with the fence he is unable to drive a car on his half of the driveway and on his adjoining land.

If the plaintiff is not allowed his claim for an easement, his options to garage his automobile on his property are stipulated to be the following:

(a) He could cut an entrance into the rear wall of his half of the garage so that he could enter the garage from the alley. However, because of the narrowness of the alley and the closeness of the garage to the alley, it would be necessary to "jockey" the car to get it into and out of the garage. In addition, the plan of so remodeling the garage would necessitate seeking a variance from the Laramie Zoning Board since the current garage does not conform to current building codes and since remodeling of a nonconforming building is not permitted without a variance.

(b) A driveway from the street could be constructed to the garage on the other side of the plaintiff's house. The driveway and its turnaround area would consume most of the plaintiff's backyard and would necessitate removing two large cottonwoods and three large shrubs.

(c) A driveway from the alley could also be constructed to the front of the garage. But it is stipulated that this solution would use up "the entire back yard."

(d) Plaintiff could construct a new garage and driveway. An estimate of $2,000.00 to $2,500.00 to accomplish this is stipulated. The new garage would be larger than plaintiff's half of the original garage.

It is also stipulated that, "the Laramie, Wyoming, Building Inspector is of the opinion that the residence owned by the Plaintiff is in violation of the provisions of the Laramie building code requiring 200 square feet off street parking for a single family dwelling and was not in such violation prior to construction of the fence."

When the defendant constructed her fence, plaintiff's tenant complained about the loss of use of the garage for parking purposes, which was part of the rental bargain and the plaintiff reduced the rent from $255.00 a month to $235.00 a month in satisfaction of the tenant's complaint.

With the fence, the garage is accessible by motorcycle, bicycle or foot.

## IMPLIED EASEMENT

The parties have phrased the issue in terms of implied easement and easement by prescription. Since we accept the plaintiff's contention that an implied easement exists, we need not discuss the claim of easement by prescription.

The Second Circuit Court recently summarized the law of implied easement and listed four requirements for the finding of an implied easement:

". . . (1) The relevant parcels of land must have once been in unitary ownership; (2) A use must have been established in which one part or parcel of the land was subordinated to another; (3) The use must be plainly and physically apparent by reasonable inspection; and (4) The use must affect the value of the estate benefited and it must be necessary to the reasonable use of such estate." *United States v. O'Connell*, 2 Cir., 496 F.2d 1329, 1333 (1974).

That the first three requirements are met with respect to the plaintiff's use of the driveway is obvious. It is also clear that the claimed easement affects the value of the estate. Whether or not the claimed easement is necessary to the reasonable use of the land is a difficult question to which we will return.

The Second Circuit also noted that creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land and "the 'inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves.'" Id. at 1332, citing Restatement of Property, § 476, comment *a*, at 2978 (1944).

We think the bare fact of construction of a common driveway and garage at the time that the defendant's residence was constructed suggests an intent on the part of the common grantor that both properties should benefit by the common garage and driveway. Certainly, the common grantor could have constructed the driveway entirely on the lot eventually owned by the defendant had he not wished the lot eventually owned by the plaintiff to have benefited from the driveway.

The Restatement, supra at 2978, also asks whether reciprocal benefits result to the conveyor and conveyee. This criterion also appears to be satisfied in that the facts suggest an intent to create a reciprocal easement.

Returning to the difficult question of necessity, it is appropriate to consider the treatment of this topic in Restatement, supra, § 476, comment *g*, at 2983–2984:

". . . If no use can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created . . .

". . . If land can be used without an easement, but cannot be used without disproportionate effect and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of necessity . . .

". . . *In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use.* Accordingly, no precise definition of necessity can be made." (Emphasis supplied)

As the defendant-appellant points out, the claimed easement is not absolutely necessary to the use of plaintiff's property. Denial of the easement will either necessitate an expense or diminish the value of the property.

As mentioned above, there "probably" was a common use of the driveway prior to severing common ownership of the two lots. The implication of an easement should be very clear from common usage of a single-lane driveway straddling a property boundary and leading to a double garage also straddling a property line. The Restatement thus suggests a lesser-required degree of necessity.

With these principles in mind, it is appropriate to analyze cases involving a claim of

easement with respect to a common driveway. Defendant places her principal reliance on *Kammerzell v. Anderson*, 69 Wyo. 252, 240 P.2d 893 (1952), in which we upheld the trial judge's factual determination that an easement to use a common driveway had not been gained by prescription. That case is different from the present case in two respects: (1) The claim was that the easement arose by prescription. In this case the plaintiff claims an easement by implication; and (2) the *Kammerzell* court made special notice of the fact that, "[i]n the instant case sufficient room is left for these plaintiffs to have a driveway accessible to their garage." 69 Wyo. at 259, 240 P.2d at 895–896. In *Kammerzell*, we specifically distinguished *Johnson v. Whelan*, 171 Okl. 243, 42 P.2d 882, 883 (1935), in which it was held that an easement by prescription arose to use a common driveway, because in *Johnson*, partition of the driveway would have left insufficient room for a driveway between the house of the plaintiffs and the property line. *Kammerzell*, supra, 69 Wyo. 259, 240 P.2d at 895.

A case more in point is *Werner v. Sample*, 259 Minn. 273, 107 N.W.2d 43 (1961). In that case, the Supreme Court of Minnesota held that an implied easement existed to use a common driveway necessary for access to the backyard and quoted from 17A Am.Jur., Easements, § 41, which used the test of whether the easement was "reasonably necessary for the fair enjoyment of the other part of the estate." We believe that use of the easement claimed in this case is reasonably necessary to a fair use of plaintiff's property. The Supreme Court of Oregon considered a driveway case in which the party resisting the claim of easement argued that access to the garage could be had by rerouting the driveway. *Dean v. Colt*, 151 Or. 331, 49 P.2d 362 (1935). The court concluded that the driveway in question, "while 'not an absolute necessity' is still 'reasonably necessary to enjoyment of the property.'" Id. at 49 P.2d 366.

On the basis of the above authorities, we shall hold that the claimed easement was sufficiently necessary in light of the facts of this case to satisfy the requirement of necessity for an easement by implication. We are aware that some other courts would disagree. E. g., *Ward v. Slavecek*, Tex.Civ. App., 466 S.W.2d 91, 92 (1971); and *Fones v. Fagan*, 214 Va. 87, 196 S.E.2d 916, 919 (1973).

Affirmed.

ROONEY, Justice, dissenting.

I agree with the general legal propositions set forth in the majority opinion. If we were concerned only with an easement in which plaintiff held the dominant estate and defendant held the servient estate, I would concur in the majority opinion.

However, such is not the case before us. The easements here are reciprocal. Defendant has an easement on plaintiff's property, and plaintiff has an easement on defendant's property. Everything said in the majority opinion concerning the rights of plaintiff applies equally to the rights of defendant. This matter was precipitated by plaintiff's interference with defendant's easement. Plaintiff first blocked defendant from her use of the driveway for access to her garage.

Plaintiff came into court seeking equitable relief in the form of an injunction. He who seeks equity must do equity. *McHale v. Goshen Ditch Co.*, 49 Wyo. 100, 52 P.2d 678 (1935); *Takahashi v. Pepper Tank & Contracting Co.*, 58 Wyo. 330, 131 P.2d 339 (1942).

"* * * This maxim, as has been variously stated in decisions dealing with it, expresses a cardinal, elementary, and fundamental principle. It is one of the oldest, best settled, and most familiar maxims in equity jurisprudence, and has been considered the source of every doctrine and rule of equity jurisdiction; it lies at the heart of equity. It is a favorite maxim with a court of equity, has been called its first maxim, and is of extensive application, not being limited to any particular class of cases, but being applicable to all classes of cases whenever necessary to promote justice, and in every kind of litigation and to every species of

remedy. A suitor cannot escape the effect of the maxim by resorting to legal niceties." 30 C.J.S. Equity § 90, pp. 983–988 (1965).

The fact that plaintiff's actions in blocking defendant from use of the easement were intermittent and only lasted for three days at a time is immaterial. When a person wants to use his garage or other reserved parking space, he wants to use it at the time selected by him. He should not be required to run his motor vehicle back and forth on an hourly or daily basis to keep his access open and free. The obstruction or blocking here was not a minor or technical misuse of defendant's easement so as to bring into contention the proposition that minor or technical misuse will not justify a forfeiture. *Central Christian Church v. Lennon,* 59 Wash. 425, 109 P. 1027 (1910); *Paul v. Blakely,* 243 Iowa 355, 51 N.W.2d 405 (1952).

The situation as it pertains to a reciprocal easement of this nature is distinguishable from the situation of a single easement with reference to the reluctance of a court to declare a forfeiture. *Buechner v. Jonas,* 228 Cal.App.2d 127, 39 Cal.Rptr. 298 (1964); *Paul v. Blakely,* supra; *Chicago, Rock Island and Pacific Railroad Company v. Spool Stockyards Company,* D.C. N.D.Tex., 220 F.Supp. 433 (1963), affirmed 5th Cir. 1965, 353 F.2d 263. The distinction lies in the fact that here plaintiff does not forfeit his dominant estate *without a quid pro quo.* Here defendant also forfeits her dominant estate. In effect, there is a mutual return of consideration, and therefore no forfeiture.

Two things can be noted as a practical matter. One, an action for damages or for injunctive relief brought by defendant for the blocking of the drive for three days at a time at various intervals is expensive and has the flavor of regularly taking "backyard squabbles" into court. It could be done, but is not as effective as the action here taken to rescind the mutual "implication" of easements. Two, those using reciprocal easements, such as here, should be extremely circumspect in assuring proper use of them. Common courtesy should be reinforced by knowledge that misuse could authorize the other party to rescind the arrangement.

Rather than encourage such misuse, I would reverse on the basis that plaintiff did not come into the court with clean hands.